John Arthur BOWDEN *v.* STATE of Arkansas

CR 74-6                                              510 S.W. 2d 879

Opinion delivered June 24, 1974

*Harold L. Hall,* Public Defender, by: *John W. Achor,* Chief Dep. Public Defender, for petitioner.

*Jim Guy Tucker,* Atty. Gen., by: *Robert S. Moore Jr.,* Asst. Atty. Gen., for respondent.

FRANK HOLT, Justice. The petitioner, by a writ of certiorari, seeks a review of the validity of a search and seizure warrant issued by the circuit court at respondent's request. In approving the search warrant, after an evidentiary hearing, the trial court suggested and permitted the petitioner sufficient time to apply to this court for a temporary stay which we granted. This case is one of first impression. The area of the search is the lower part of the petitioner's spinal canal where the object of the search, a bullet, is lodged. Petitioner is a suspect in a robbery-murder. He fits the description of one of two men seen fleeing the scene of the crime. One ran bent forward clutching his stomach, apparently wounded. Within a few minutes an unidentified individual brought petitioner to a local hospital. He was suffering from a stomach wound. An x-ray revealed that a bullet resembling a .38 caliber had come to rest in his spinal canal. The deceased had fired a .38 caliber pistol at the robbers. Petitioner has denied complicity to the officers and told them he had suffered a .22 caliber gunshot wound in a gambling game.

Petitioner first asserts that the search warrant is constitutionally impermissible on the basis that it constitutes an unreasonable search and seizure in contravention of the Fourth Amendment of our United States Constitution. That amendment reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, . . . .

The identical provision is found in our Ark. Const. Art. 2, § 15 (1874). The standard by which a state can conduct

reasonable Fourth Amendment searches is delineated in *Schmerber* v. *California,* 384 U.S. 757 (1966). There the issue was whether the taking of a blood sample from the defendant without his consent was admissible in evidence against him. The purpose was to determine the state of intoxication. There the United States Supreme Court held the evidence was admissible and met the Fourth Amendment test of reasonableness since that minor intrusion into the body was an effective means of determining intoxication, imposed no risk, trauma, or pain and was performed in a reasonable manner (a needle) in the hospital by a physician.[1] However, the *Schmerber* decision issued a restrictive warning in clear and unmistakable language articulating the permissible extent of an intrusion or invasion of the human body to secure evidence. The court said:

> That we today hold that the Constitution does not forbid the States *minor intrusions* into an individual's body under stringently limited conditions *in no way indicates* that it permits more *substantial intrusions,* or intrusions under other conditions. (Emphasis added.)

The Fourth Amendment requirements for such a procedure as was there prescribed are further bolstered by a fundamental due process consideration that ". . . . inescapably imposes upon this court an exercise of judgment upon the whole course of the proceedings in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice of English speaking peoples even toward those charged with the most heinous offenses." *Malinski* v. *New York,* 324 U.S. 401 (1945), cited in *Rochin* v. *California,* 342 U.S. 165 (1952). in *Rochin,* petitioner swallowed two narcotic capsules as officers approached him. After an unsuccessful manual attempt to remove the capsules from petitioner's throat, his stomach was pumped at a hospital against his will. The evidence was held admissible at trial. In reversing, the court characterized the procedure as offensive to "even hardened sensibilities" and "too close to the rack and the screw to permit of constitutional differentiation." There the late Mr. Justice Frankfurter analogized

---

[1] It is interesting to note the similarity of the workmen's compensation test for discontinuing benefits when a claimant refuses surgery. See, 1 Larson, Workmen's Compensation Law § 13.22 (1972) and cases cited therein.

this method of search and seizure to that of coerced confessions by saying:

> Coerced confessions offend the community's sense of fair play and decency. So here, to sanction the brutal conduct which naturally enough was condemned by the court whose judgment is before us, would be to afford brutality the cloak of law. Nothing would be more calculated to discredit law and thereby to brutalize the temper of a society.

Within the framework of the Fourth Amendment and due process restrictions, we turn now to the propriety of an operation for the removal of a bullet from the human body where the individual objects. Two state jurisdictions have addressed the matter. Indiana appears to flatly reject the procedure, relying on *Schmerber* and *Rochin,* as being prohibited by the Fourth Amendment and due process even if the operation would only require a local anesthetic to remove the bullet or metalic fragments lodged in the flesh of the buttocks of a felony murder suspect. *Adams* v. *State,* 299 N.E. 2d 834 (Ind. 1973), cert. denied, 94 S. Ct. 1452 (February 19, 1974). Georgia allowed the operation where a medical examination determined no danger to life or health was involved since the bullet could be removed in no more than fifteen minutes with a local anesthetic. *Creamer* v. *State,* 229 Ga. 511, S.E. 2d 350 (1971). *Creamer* was reluctantly followed in *Allison* v. *State,* 129 Ga. App. 364, 199 S.E. 2d 587 (1973), where the evidence was uncontradicted that the bullet could be removed without danger to life or limb. In *Creamer* the bullet was lodged in the fat, subcutaneous area of the right side of the chest, within the area of the muscle. In *Allison* the bullet was lodged in defendant's right side just below the skin.

In the case at bar, at the evidentiary hearing two doctors testified about the required surgical procedure to remove the bullet from the petitioner who had remained in the hospital under their observation. They located the bullet in the lower spinal canal. Both agreed that surgical removal could cause a worsening of petitioner's condition due to the involvement of spinal nerves. A general anesthetic would be required. Although both doctors recommended the removal of the

bullet, the opinion was also expressed that a fatal risk was involved by surgical intervention. Each doctor described the operation, medically, as a "major intrusion" into the human body.

We are not insensitive to the strong showing of petitioner's involvement presented by the state. However, it is our appellate responsibility to maintain an awareness of the potential misuse which could arise if we approved such a procedure which so clearly is contrary to the mandate in *Schmerber* and *Rochin.* In applying the requirements of *Schmerber,* in the case at bar, we hold that the issuance of the search warrant does not meet the stringent standard of reasonableness there enunciated. It is uncontroverted that the proposed operation constitutes medically a major intrusion into the petitioner's body involving trauma, pain and possible risk of life even when performed in a proper medical environment with the most careful and skilled attention. The medical testimony most favorable to the state is that the risk of serious complication of petitioner's injury by removal of the bullet at least equals the risk of such complication with the bullet left in place. Other testimony was that there was a greater percentage of risk of complication in removal of the bullet than there would be if it were not removed. Just as coerced confessions are inadmissible evidence because they are offensive to a community's sense of fair play and decency and our American jurisprudence, it follows that a substantial intrusion into a defendant's body, without his consent, involving pain, trauma and risk of serious complications, is equally offensive to due process standards as well as the test of reasonableness required by the Fourth Amendment and also the same provision in our Arkansas Constitution. Therefore, it becomes unnecessary to discuss petitioner's other contentions for quashing the search and seizure warrant.

The temporary stay is made permanent and the warrant is quashed.