409 So.2d 25 (1981)
John DOE (Hamby McCaskill), Appellant,
v.
STATE of Florida, Appellee.
No. WW-153.
District Court of Appeal of Florida, First District.
October 23, 1981.
On Rehearing January 28, 1982.
Rehearing Denied February 23, 1982.
*26 Jack Behr, Public Defender, Terry D. Terrell, Asst. Public Defender, Pensacola, for appellant.
Jim Smith, Atty. Gen., A.S. Johnston and Miguel Olivella, Jr., Asst. Attys. Gen., Tallahassee, for appellee.
PER CURIAM.
McCaskill seeks review by appeal of an order granting the state's application for surgical removal of a bullet from McCaskill's leg. Although appeal is an inappropriate procedure,[1] we grant certiorari[2] to address the issue presented. We conclude that, in the circumstances of this case, surgical removal of the bullet, without McCaskill's consent, would constitute an unreasonable search and seizure prohibited by the Fourth Amendment of the United States Constitution and Article I, Section 12, of the Florida Constitution.
The state contends that on the evening of June 25, 1976, in the course of an attempted armed robbery of a gas station, the attendant was murdered. Prior to being killed, the victim fired four shots from a 32-caliber pistol. Police officers subsequently received information identifying the persons involved in the robbery, and directing the officers to the hospital at which one of the assailants allegedly received treatment for a gunshot wound. Hospital records establish that on June 26, 1976, McCaskill received treatment for such a wound. X-rays taken at that time, and x-rays taken in 1980, indicate that a 32-caliber bullet is lodged near the groin of the left leg about 1/2 inch beneath the skin surface, and that the bullet is neither fragmented nor distorted. The bullet was not removed.
Identification of a bullet is made by comparing its fine rifling striations with the barrel of a particular gun, or with another bullet fired from the same gun. However, x-rays are not capable of revealing rifling striations on a bullet, and expert testimony in this case suggested that the fine rifling striations may have been altered or obliterated by the chemical effect of body fluids upon the bullet. The testifying expert was unable to express an opinion as to whether the bullet in McCaskill's leg retains any of the fine rifling striations intact; the expert indicated that such an opinion would "border on speculation," and that only by microscopic examination of the bullet could a determination be made as to its evidentiary value.
After considering the evidence, the trial judge found probable cause to believe that McCaskill was involved in the armed robbery and murder of the gas station attendant and that the bullet in McCaskill's leg was fired from the attendant's pistol and would be "material and relevant as evidence in this cause." The judge further found:
That the location of the projectile in Hamby McCaskill, Jr.'s, left thigh is located one-half inch below the skin and can be removed by minor surgical procedure with the use of a local anesthesia; that there is little or no risk of any permanent injury or any residual harm; that the evidence herein could not be obtained in any other manner except by surgery.
On the basis of his findings the judge ordered surgical removal of the bullet "in accordance with accepted medical and professional practices... ."
In Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the U.S. Supreme Court considered non-consensual body intrusions in the context of the Fourth Amendment search and seizure provisions. The Court indicated that Fourth Amendment protections "forbid any such intrusions on the mere chance that desired *27 evidence might be obtained," and require "a clear indication that in fact such evidence will be found... ." While Schmerber approved a compulsory blood test in the circumstances of that case, the Court cautioned:
That we today hold that the Constitution does not forbid the State minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions.
Since the decision in Schmerber, other courts have considered, within the context of Fourth Amendment search and seizure provisions, surgical intrusions into a defendant's body to procure evidence of crime. One state court has adopted a rule that any compulsory surgical removal of a bullet is per se unconstitutional. See Adams v. State, 260 Ind. 663, 299 N.E.2d 834 (1973), cert. denied, 415 U.S. 935, 94 S.Ct. 1452, 39 L.Ed.2d 494 (1974). Other courts have declined to adopt a per se rule of unconstitutionality, but have nevertheless found that the Fourth Amendment precludes compulsory surgical removal of a bullet in the particular circumstances before those courts. See State v. Overstreet, 551 S.W.2d 621 (Mo. 1977); also see Bowden v. State, 256 Ark. 820, 510 S.W.2d 879 (1974); Bloom v. Starkey, 65 App.Div. 763, 409 N.Y.S.2d 773 (App.Div. 1978); People v. Smith, 80 Misc.2d 210, 362 N.Y.S.2d 909 (S.Ct. 1974). And other courts have held that the Fourth Amendment does not preclude compulsory surgical removal of a bullet in appropriate circumstances. See U.S. v. Crowder, 543 F.2d 312 (D.C. Cir.1976), cert. denied, 429 U.S. 1062, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977); Creamer v. Georgia, 229 Ga. 511, 192 S.E.2d 350 (1972), cert. dismissed, 410 U.S. 975, 93 S.Ct. 1484, 35 L.Ed.2d 709 (1973); Allison v. State, 129 Ga. App. 364, 199 S.E.2d 587 (1973); State v. Richards, 585 S.W.2d 505 (Mo. App. 1979).
None of the cited cases involve any suggestion that the requested surgery could be undertaken without a "clear indication" that evidence of the requisite character would be obtained. In the present case expert testimony showed that the bullet in McCaskill's leg is only speculatively of any evidentiary value, due to the possible alteration of rifling striations by the chemical effect of body fluids over a four year time span. In these circumstances we conclude the evidence established that there was only a chance that the bullet would be of evidentiary value, and absent the clear indication required by Schmerber, a compulsory surgical intrusion into the appellant's body would be an unreasonable search and seizure prohibited by the Fourth Amendment of the United States Constitution and Article I, Section 12 of the Florida Constitution.
Accordingly, certiorari is granted and the contested order is hereby quashed.
SHAW, WENTWORTH and THOMPSON, JJ., concur.

ON MOTION FOR REHEARING
PER CURIAM.
Our initial opinion was based upon the questionable evidentiary value of striation marks likely to be found upon a bullet some five years after it entered the body of the accused. In its motion for rehearing the State convincingly points out that aside from striation marks the projectile itself is relevant to the prosecution. (Physical examination of the bullet would provide positive confirmation as to its caliber.)
The victim, before expiring, discharged a .32 caliber weapon at his assailants several times. The following day the accused was treated by a physician for a gunshot wound which he claims was inflicted by a .22 caliber rifle. Without removing the bullet ballistics experts are only able to opine that "it probably is a.32." This is a step removed from the positive confirmation that the State seeks to establish and that removal and examination of the projectile will produce.
Florida Rule of Criminal Procedure 3.220(b)(1)(vii) permits the taking of samples of blood, hair, and other materials of the body which involves no unreasonable *28 intrusion thereof. Where, as in this instance, there is evidence before the trial judge that the object sought to be removed is relevant and the surgical procedure required to remove it will entail only minor intrusion into the body with negligible risk of harm or injury to the accused, the intrusion neither violates the right of privacy nor the prohibition against unreasonable intrusion into the body. In the instant case there was evidence that the bullet sought to be removed is approximately one-half inch below the surface of the skin and can be removed by minor surgery involving the use of a local anesthetic. The pain involved would be minimal, and the surgery is not the type that would result in permanent injury to the accused. Despite whatever misgivings we might have relative to the questionable evidentiary value of the striation marks, we have reconsidered our position in light of the State's assertion that the projectile itself has evidentiary value and is relevant to the prosecution's case.
The motion for rehearing is granted, and the order authorizing surgical removal of the bullet is affirmed.
SHAW AND THOMPSON, JJ., concur.
WENTWORTH, J., dissenting with opinion.
WENTWORTH, Judge, dissenting.
I would deny rehearing because the newly asserted indispensability of the bullet to any prosecution of appellant or to adequate caliber identification was not alleged in the trial court or in the brief here in support of the order. That omission may be explained by the marginal merit of such a contention in the face of clear evidence available without surgery which excludes every other reasonably possible caliber identification, e.g., unequivocal radiologist's testimony that the bullet in McCaskill's body "can't be a thirty-eight or a twenty-two." The application and amended application for surgical removal instead state only a need for striation identification, i.e., "the bullet in McCaskill's left thigh is needed to determine if it was in fact fired by Felton Robitzsch. The .32 caliber pistol ... could be sent to the lab along with the bullet ... to determine if in fact the bullet was fired from Mr. Robitzsch's pistol."
The trial judge therefore did not have before him even the doubtful merit of the argument now made, and his order permitting surgery should in my opinion be reversed because the application was deficient for the reasons stated in the original opinion in this cause.
NOTES
[1] See Fla.R.App.P. 9.140.
[2] See Fla.R.App.P. 9.040(c).