187 N.J. Super. 25 (1982)
453 A.2d 556
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIE LEE LAWSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted July 1, 1982.
Decided August 5, 1982.
Before Judges BOTTER, ARD and KING.
Stanley C. Van Ness, Public Defender of New Jersey, attorney for appellant, (Thomas Menchin, Deputy Public Defender, of counsel and Edward S. Peranio on the brief).
*26 Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent, (George L. Schneider, Essex County Prosecutor, of counsel and Marc J. Friedman, Deputy Attorney General, on the letter brief).
The opinion of the court was delivered by KING, J.A.D.
This case presents the issue of the right of the State to have a bullet surgically removed from a suspect's body for use as evidence in a murder prosecution. Because the issue is important and has not been addressed in this State, we granted defendant's motion for leave to appeal from the Law Division order of May 4, 1982. R. 2:5-6.
That order granted the State the right to proceed by surgical means to extract a metallic object, suspected to be a .38-calibre bullet, lodged in the soft tissue of defendant's thigh. We have chosen to accelerate the matter and reach the merits. R. 2:11-2.
On December 11, 1980 defendant was indicted for the murder of a Newark police officer and other related crimes committed during a bank robbery on December 6, 1980. He promptly confessed. Thereafter, on January 14, 1981 defendant, through his counsel, filed a notice of alibi, R. 3:11, contending that he was not at the scene of the bank robbery. The prosecutor's interest in retrieving the bullet thereupon heightened. On May 13, 1981 the State moved for judicial permission to compel defendant to submit to a physical examination, x-rays and ultimately surgery for removal of the suspected bullet.
The State's application for surgical intervention contained a verified petition alleging that defendant had been arrested on the day of the homicide and "had given a sworn statement to police in which he admitted his participation in the robbery of the Howard Savings Bank and the murder of Police Officer Gottfried." In that statement defendant also had admitted being shot in the left leg by Officer Gottfried during an exchange *27 of gunfire during the robbery. On the day after his arrest, defendant had been taken to College Hospital for treatment of the gunshot wound in his left thigh. An x-ray of his thigh revealed a metallic object which appeared to be a .38-calibre slug.
Based on the probable cause established by the prosecutor's verified petition, the judge ordered a medical examination by Dr. Donald Brief, a general surgeon, and an x-ray examination. Thereafter, he reported as follows:
I have reviewed the films and the accompanying records in the matter of Willie Lawson. The bullet lies in the soft tissues in the posteromedial side of the upper thigh inferior to the ischiac tuberosity. In this location it is readily accessible and is not in bone. It can be removed without jeopardizing limb function or circulation to the limb. I do not think surgery imposes any unusual problems in this matter.
In June Dr. Brief, upon re-examination filed a follow-up report stating, "The position of the bullet [is] unchanged" from February, and repeating, "using proper localization procedures pre-operatively in the x-ray department with the insertion of needles to further secure the position of the metallic object, this bullet can be safely removed without threatening the patient's life or jeopardizing his limb."
In the fall of 1981 an evidentiary proceeding was conducted. Dr. Brief, a graduate of Harvard Medical School, who received his surgical training at the Peter Bent Brigham Hospital and was board-certified in general surgery, testified. He said that the patient would be placed in the safe lithotomy position with the legs flexed. Then, "through a relatively small incision in the back of the thigh the bullet would ... be extracted with minimal tissue damage." He said that the bullet was not lodged in the bone, nor was it near any major nerve or vascular structure. The bullet was three-quarters to one inch below the surface of the skin. Local anesthesia could be used if the patient cooperated; if not, general anesthesia would be used. The doctor conceded that there was no medical reason to remove the bullet presently. However, it might cause trouble in the future. The proposed operation, said Dr. Brief, "will produce no *28 functional impairment of the limb and is not a serious operation in ... itself," adding, that "from a surgical point of view it's [a] relatively minor procedure" taking about one-half hour at most. He estimated blood loss at 15 to 20 cubic centimeters, "a teaspoonful or two." The incision would be two to three inches long. There would be some temporary, mild discomfort post-surgically but no permanent residual other than very minimal added scarring.
Dr. Howard Kortis, a board-certified anesthesiologist, also testified. He concluded that this procedure should be done under local anesthesia but agreed that lack of cooperation by the patient might require resort to general anesthesia. Even under general anesthesia, the risk to defendant "would be about the same as walking across the street and getting hit by a car  negligible risk, if any." Dr. Kortis concluded that "there is essentially no difference" in the degree of risk to this defendant whether general or local anesthesia is used since he appeared to be in Class One, or the lowest-risk category on the standard medical scale. The defendant offered no testimony.
In his written opinion the Law Division judge properly recognized that the right against self-incrimination was not here implicated. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). He considered four factors relevant to the request for a surgical retrieval of the evidence: (1) the serious nature of the crime, (2) probable cause that defendant committed the crime, (3) relevance and impact of the evidence on the issue of guilt and (4) the degree of risk to defendant and the magnitude of the surgical intervention. The judge concluded from the proofs that "based upon reasonable medical certainty ... the bullet can be removed from defendant's body with virtually no risk ... caused by the utilization of a local anesthetic." He further concluded that the proposed surgery "does not shock the conscience of the court and does not offend those canons of decency and fairness sought to be preserved by our Federal and State Constitutions." In addition to authorizing surgery under local anesthesia, the order stated that "should *29 defendant offer any resistance ... the surgeon may take such appropriate and necessary steps as would be utilized in accordance with accepted medical standards and practices, to control any difficult patient under similar circumstances," having due regard for the defendant's well being.
We are satisfied that the record supports the Law Division judge's order. This is not conduct, as Justice Frankfurter said, "too close to the rack and the screw to permit of constitutional differentiation." Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952) (stomach pumped to secure evidence of ingested narcotics). Rather, we conclude that the procedure here proposed falls on the constitutionally-permissible side of the due process standard announced in Schmerber v. California, supra 384 U.S. at 772, 86 S.Ct. at 1836, and constitutes "a minor intrusion into an individual's body under stringently limited conditions" in a medical environment. See also, Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1951).
The State has not proceeded unilaterally or imperiously but has triggered a judicial, adversarial hearing in which defendant had the full right to question the proposed procedure and offer evidence. Defendant has been afforded prompt, preoperative appellate review. See United States v. Crowder, 543 F.2d 312, 316-317 (D.C. Cir.1976) (en banc) cert. den. 429 U.S. 1062, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977); State v. Overstreet, 551 S.W.2d 621, 626 (Mo.Sup.Ct. 1977), similar cases where the courts held that the availability of an adversarial hearing and prompt appellate review were salutary aspects of procedural due process. The surgical procedure here proposed is relatively minor; general anesthesia will be needed only if defendant is uncooperative; the charge is serious and the evidence highly relevant.
Courts throughout the country have generally approved procedures to recover bullets from the bodies of criminal suspects in prosecution of serious cases where the slug was lodged close to the skin surface, the operative procedure was minor, minimal risk was posed, local anesthesia was employed, and no residual disability would ensue to the suspect. United States v. Crowder, *30 supra (bullet just below skin); Doe v. State, 409 So.2d 25 (Fla. Dist. Ct. App. 1982) (bullet 1/2 inch below skin); Creamer v. State, 229 Ga. 511, 192 S.E.2d 350 (Sup.Ct. 1972) (bullet in fatty, subcutaneous tissue in chest); Allison v. State, 129 Ga. App. 364, 199 S.E.2d 587 (Ct.App. 1973) (superficially lodged beneath skin); State v. Richards, 585 S.W.2d 505 (Mo. Ct. App. 1979) (bullet in hip flesh four inches below surface); contra, Adams v. State, 260 Ind. 663, 299 N.E.2d 834 (Sup.Ct. 1973), cert. den. 415 U.S. 935, 94 S.Ct. 1452, 39 L.Ed.2d 494 (1974) (per se rule against any surgical intrusion established by a 3-2 decision). Where serious or major surgery was required, judicial permission for surgery has been refused. See Bowden v. State, 256 Ark. 820, 510 S.W.2d 879 (Sup.Ct. 1974) (bullet in spinal canal); People v. Smith, 80 Misc.2d 210, 362 N.Y.S.2d 909 (Sup.Ct. 1974) (bullet lodged underneath the muscles of the chest wall); see also State v. Allen, 291 S.E.2d 459 (S.C. 1982).
We are satisfied that the Law Division order entered by Judge Martino adequately protects defendant's rights in the circumstances of this proposed minor surgical procedure. His order is affirmed.