466 A.2d 533

**Jackie HUGHES**

v.

**STATE of Maryland.**

**No. 1861, Sept. Term, 1982.**

Court of Special Appeals of Maryland.

Oct. 13, 1983.

Certiorari Denied Feb. 1, 1984.

14

Clarence W. Sharp, Assigned Public Defender, with whom was Alan H. Murrell, Public Defender, on the brief, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., Andrew L. Sonner, State's Atty. for Montgomery County and John D. Duncan, Jr., Asst. State's Atty. for Montgomery County, on the brief, for appellee.

**16**

Argued before LOWE, WEANT and BLOOM, JJ.

WEANT, Judge.

Appellant, Jackie Hughes, was indicted by the Montgomery County Grand Jury on 16 April 1981 on charges of murder, robbery with a deadly weapon, and use of a handgun in a crime of violence in connection with the death of one Richard Edwards. His case ultimately came to trial before a jury on November 23–December 8, 1981. Appellant was convicted of first degree murder—premeditated and in the perpetration of a felony, robbery with a deadly weapon and use of a handgun in a crime of violence. Dissatisfied with the outcome, the appellant filed a timely appeal in which he raises the following issues for our consideration:

1. Did the surgical extraction of the bullets from Appellant's body without his consent constitute an unreasonable search and seizure under the Fourth Amendment to the Constitution of the United States?

2. Were the conclusions of the firearms examiner admissible without expressing or demonstrating the factual basis for the comparisons which led to his conclusions?

3. Did the trial court err in permitting introduction of the testimony of three witnesses following hypnosis?

4. Did the State's presentation of the three hypnotized witnesses, albeit that they were not called upon by the State to testify as to their observations, deny Appellant a fair trial and due process of law?

5. Did the trial court properly instruct the jury with respect to the burden of proof where the evidence consisted solely of circumstantial evidence?

6. Did the State breach the order of sequestration?

7. Was the evidence presented sufficient to sustain Appellant's convictions?

On the afternoon of 2 March 1981, Richard Edwards was carrying the weekend receipts and $27,000 in cash and commercial paper from the restaurant he managed. He intended to deposit these funds in the bank directly across the street from his establishment. In addition to the deposit bag, Edwards had a .25 caliber Browning automatic pistol.

As he began crossing the street, a black male ran up behind him, put a gun to his stomach and pumped a number of lead bullets into him. As Edwards began to fall, he responded with five shots at his assailant who had grabbed the deposit bag and begun to run, leaving behind a shoulder bag-type pocketbook and a trail of blood on the sidewalk. Edwards succumbed to his wounds two days later.

Approximately one-half hour after the shooting, appellant was admitted to the Veterans' Hospital in the District of Columbia. He had been shot five times. X-rays revealed bullet fragments in the left wrist, and bullets in the abdomen, hip and back, just below the skin surface. Emergency surgery to repair extensive internal damage from the other bullet wounds was performed but the superficially lodged bullets were not removed.

Although initially unopposed to the removal of the three bullets, appellant subsequently rescinded his consent; he had been informed that, upon their removal, the bullets would be turned over to the police. The U.S. Attorney's office in the District of Columbia reacted with an application for a search warrant to compel the removal of the three bullets.

On 16 March 1981, a hearing was held where appellant was represented by both a public defender and the privately retained attorney who was to represent appellant in Maryland. The court granted the U.S. Attorney's request, finding that removal of the bullets could be accomplished through a minor surgical procedure. The appeal which followed in the District of Columbia Court of Appeals resulted in the affirmation of the lower court's determination on 30 March 1981. *Hughes v. United States,* 429 A.2d 1339 (1981).

Subsequently, the bullets were removed and appellant was extradited to Maryland where he stood trial for the murder of Edwards. Prior to trial, appellant filed a motion to suppress, asserting, *inter alia,* that the bullets were improperly obtained. The trial court rejected appellant's contention and denied the motion to suppress. Appellant now asserts on appeal the impropriety of the court-ordered surgical extraction.

18

As Hughes had anticipated, the bullets removed from his body proved to be damning evidence against him. Appellant contends that the surgical extraction of those three slugs from superficial areas of his right lower abdomen, right hip, and right back constituted an unreasonable intrusion into his body and, therefore, a violation of his Fourth and Fourteenth Amendment rights. In rejecting appellant's claim, we address this issue for the first time, thereby joining the majority of other jurisdictions in holding that minor surgery to remove a bullet from a defendant's body is not constitutionally repugnant. In so deciding, we apply the Supreme Court's holding in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966):

> That we hold today that the Constitution does not forbid the State minor intrusions into an individual's body under stringently limited circumstances, in no way indicates that it permits more substantial intrusions or intrusions under other conditions.

384 U.S. at 772, 86 S.Ct. at 1836.

■ The *Schmerber* court essentially addressed the extent and nature of a physical intrusion. The reasonableness of an intrusion turns on the degree and manner of its interference with an individual's privacy and dignity. *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed.2d 183 (1952). Unlike the circumstances present in *Rochin,* we do not find the facts of the case at bar "so brutal and so offensive to human dignity" that they "shock the conscience." 342 U.S. at 172, 174, 72 S.Ct. at 209, 210. Because reasonableness is a matter of degree, our decision is in no way to be interpreted as a general approval of surgical operations to procure evidence. Rather, after careful scrutiny of existing case law from other jurisdictions, we embrace the four-factor test announced by the United States District Court in *United States v. Crowder,* 543 F.2d 312 (CADC 1976), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977), as a prerequisite for the admission of evidence obtained by surgical methods:

(1) The evidence sought is relevant, can be obtained in no other way, and there is probable cause to believe that the proposed operation will produce it;

(2) the operating procedure is a minor one, to be performed by a skilled surgeon, with every possible precaution to be taken to guard against any surgical complications, so that the risk of permanent injury is minimal;

(3) prior to performance of the operation, the individual is to be afforded a full adversary hearing at which he is represented by counsel;

(4) thereafter and before the operation is performed, the individual is to be afforded the opportunity for appellate review.

*See U.S. v. Crowder, supra,* at 316.

██ In the case *sub judice,* consideration of this four-factor analysis leads us to the conclusion that the surgical extraction was proper. (1) Appellant concedes that the only substantive evidence linking him to the shooting of Richard Edwards came from a positive comparison of the bullets removed from appellant's body with the pistol used by the victim. (2) Medical testimony indicated that all three of the bullets were lodged subcutaneously, just below the surface of the skin, one, in fact, being "on the verge of breaking through." The surgery was characterized as minor, *i.e.,* performed under local anesthetic at appellant's hospital bedside. The surgical intrusion itself involved an incision (over each projectile site) approximately an "inch or two in length, carr[ied] down to where the bullet(s) were lodged." (3) Appellant had been present and represented by both a District of Columbia public defender and private attorney at a full adversary proceeding in the District of Columbia prior to the surgery; and finally, (4) upon application by appellant to the District of Columbia Court of Appeals for summary reversal, the decision of the lower court to permit the surgical extraction was affirmed.

In our view, the requirements of the four-factor test were conscientiously adhered to, making the surgical extraction of

the bullets pursuant to a court order proper and not violative of appellant's Fourth and Fourteenth Amendment rights.

While we have seen fit to consider the Fourth and Fourteenth Amendment argument on the search and seizure question posed by the appellant, we note, in passing, that the trial court's action in this regard was dictated by the Full Faith and Credit clause of Art. IV of the Constitution of the United States because of the prior adjudication of this matter in the courts of the District of Columbia.

### 2.

■ Appellant contends that an improper foundation was laid for the introduction of the testimony of the State's firearms examiner. He complains that no comparison photographs of the examiner's observations or verbal description of the points of comparison of the bullets he examined were introduced. However, because the record is devoid of any objection to this evidence, we need not address the issue as it is not properly before us. Md.Rule 1085.

### 3.

■ The exclusion of hypnotically induced or influenced testimony is mandated by the recent Court of Appeals decision in *State v. Collins*, 296 Md. 670, 464 A.2d 1028 (1983). However, in that decision the Court explicitly exempted hypnosis used for investigative purposes from its general ban, provided that in-court testimony be limited to statements made by a witness prior to undergoing hypnosis. The *Collins* court said:

> We are not satisfied that hypnotically enhanced testimony meets the *Frye-Reed* test. This does not mean that it is impermissible to use hypnosis for investigative purposes. We see no reason why a person should not be permitted to testify in court in accord with statements which it clearly can be demonstrated he made prior to hypnosis.

At 702, 464 A.2d at 1044.

In the case at bar, two witnesses to the latter part of the shooting, David McGowan and Eugene Saunders, saw the

assailant get into a car and drive, or be driven away, from the crime scene. After giving statements to the investigating officers recounting their observations, including a description of the assailant and the escape vehicle, both men agreed to be hypnotized. At trial, the State, in "an abundance of caution," elected not to utilize testimony from these witnesses. Instead, the witnesses' direct testimony was limited to recounting that they had been present at the crime scene and had subsequently given statements, already accepted into evidence, prior to undergoing hypnosis. According to our notion this did not constitute error.

4.

In a related complaint, appellant contends that the State's presentation of these witnesses, albeit they were not called upon to testify as to their observations, denied appellant a fair trial and due process of law. We observe that no objection was made by appellant to the testimony of these witnesses at trial. As a result, the issue raised is not properly before us, Md.Rule 1085; we choose not to address it other than to observe that appellant's counsel thoroughly cross-examined these witnesses as to the scope of their knowledge thereby eliminating any improper inferences.

5.

■ Citing the absence of direct evidence to prove his criminal agency in the case at bar, appellant submits that the trial judge erred in failing to administer an instruction requested by his counsel to the effect that "circumstantial evidence should be such that it excludes every reasonable hypothesis that appellant was the person who committed the crime alleged" in order for the jury to convict. It is appellant's position that the deliberate omission of such an instruction precluded the jury from correctly applying the burden of proof beyond a reasonable doubt as required by due process. We find appellant's position untenable.

■ It is well established that jury instructions must be viewed as a whole. *Pressley v. State,* 295 Md. 143, 454 A.2d 347 (1983). A review of the record reveals that the trial

judge thoroughly advised the jury as to the definition of circumstantial evidence, including in his instructions examples of commonplace situations where the jurors themselves would use circumstantial evidence in order to facilitate their understanding of the term. It is also clear from the record that the judge correctly instructed the jurors as to the State's burden of proof. *See, Metz v. State,* 9 Md.App. 15, 23, 262 A.2d 331 (1970). Thus, inasmuch as the trial court completely and accurately informed the jury of the State's burden of proof beyond a reasonable doubt and of the definition of reasonable doubt, the omission of the requested instruction in the instant case does not warrant reversal.

### 6.

■ Despite the absence of any witness inside the courtroom during the testimony of any other witness, appellant alleges a violation of Md.Rule 755, exclusion of witnesses. Appellant contends that it was error for the Assistant State's Attorney to remove an exhibit (shoulder-bag) from the courtroom, without the court's permission, for the purpose of asking a witness if she recognized it in violation of the order of sequestration. If this be error, it was harmless, as the witness ultimately stated that she had never seen appellant with that bag.

### 7.

■ Regardless of the lack of any eyewitness identification of appellant in this case, we hold that the plethora of circumstancial evidence introduced at trial was sufficient to permit the trier of fact to find beyond a reasonable doubt that appellant was the criminal agent.

First, appellant's own admission established that he had been shot in another area at the same time that the shooting of Edwards occurred. However, an investigation of the place where appellant claimed he was shot revealed that, in fact, no shooting incident had occurred there. Second, appellant's blood type was the same as that of the blood samples taken from the crime scene. Third, Edwards was shot with .38 caliber ammunition. An empty box of .38

caliber ammunition was recovered from appellant's home. Similarly, appellant received five wounds from .25 caliber ammunition. The weapon carried and used by the victim was a .25 caliber weapon capable of firing seven shots; two live rounds of ammunition remained in the weapon when it was found. In addition, an analysis of hair reflected that the perpetrator was a black male, as is appellant. Furthermore, some over-the-counter toothache medicine was recovered from both the handbag found at the scene of the shooting and from appellant's residence. Most important, however, was the testimony of the firearms expert that the .25 caliber bullets surgically removed from appellant were fired from the same .25 caliber weapon that had been used by the now deceased Edwards.

These circumstances, when considered together, clearly lead to the conclusion that a rational trier of fact could find beyond a reasonable doubt that appellant was the criminal agent. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979).

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

LOWE, J., concurs in the result.