IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 24, 2002

**STATE OF TENNESSEE v. ALLEN PRENTICE BLYE**

**Appeal from the Criminal Court for Sullivan County**
**Nos. S42, 293     R. Jerry Beck, Judge**

---

**No. E2001-01227-CCA-R3-CD**
**September 19, 2002**

---

JOE G. RILEY, J., concurring.

I write separately to express my concern over utilizing the *ex parte* search warrant process rather than an adversarial hearing to secure a blood sample from a defendant after adversarial proceedings have begun where there are no exigent circumstances. To my knowledge, this issue has not been addressed by our state supreme court.

The majority opinion correctly notes that cases from this court authorize the state, when seeking a blood sample from the defendant, to either secure a search warrant <u>or</u> file a motion in the trial court and have an adversarial hearing. *See* <u>State v. Baker</u>, 956 S.W.2d 8, 13 (Tenn. Crim. App. 1997); *see also* <u>State v. Mabon</u>, 648 S.W.2d 271, 276 (Tenn Crim. App. 1982) (suggesting that a search warrant should be utilized rather than an adversarial hearing). In the absence of exigent circumstances, I question the wisdom of these holdings.

There is something inherently inappropriate when the state through law enforcement officers, while a case is pending, approaches a trial judge *ex parte* (without knowledge of the defendant or his counsel) and secures a search warrant for the drawing of defendant's blood in the absence of exigent circumstances. This procedure has been the subject of criticism; "[i]ndeed, in situations where the intrusion into the body is of a serious nature, an adversarial hearing may be required, or at least preferred, over an *ex parte* search warrant." D. Raybin, **Tennessee Criminal Practice and Procedure** § 18.179, p. 645 (1984) (criticizing the <u>Mabon</u> holding as "unfortunate"); *see also* <u>Winston v. Lee</u>, 470 U.S. 753, 763 n.6, 105 S. Ct. 1611, 84 L. Ed. 2d 662 (1985) (declining to reach the issue of whether a full adversarial proceeding is required before the state can compel a surgical procedure because a full adversarial proceeding was, in fact, conducted in the trial court); <u>United States v. Crowder</u>, 543 F.2d 312, 316 (D.C. Cir. 1976), *cert. denied* 429 U.S. 1062, 97 S. Ct. 788, 50 L. Ed. 2d 779 (1977) (approving surgical operation in search of evidence, but emphasizing the trial court "held an evidentiary hearing at which the defendant appeared with counsel"); <u>State v. Jackson</u>, 889 S.W.2d 219, 222 (Tenn. Crim. App. 1993) (noting the taking of pubic and head hairs from a defendant immediately after his arrest did not invoke the Sixth Amendment right to counsel

where "judicial proceedings had [not] been initiated against him at the time of the examination"); 3 LaFave, **Search and Seizure** § 5.3(c) n.149 (1996). Some jurisdictions have concluded that an adversarial hearing with the opportunity for interlocutory appellate review is necessary prior to any surgical invasion to seize evidence. *See* Hughes v. State, 56 Md. App. 12, 466 A.2d 533, 536 (1983); State v. Overstreet, 551 S.W.2d 621, 627-28 (Mo. 1977); State v. Lawson, 187 N.J. Super. 25, 453 A.2d 556, 558 (1982). I realize that many of these cases involved surgical procedures, not the withdrawal of blood; however, I believe the same rationale should apply to blood withdrawals.

In the case *sub judice*, there were no exigent circumstances dictating the need to immediately take the blood sample without giving the defendant and his counsel notice and the opportunity to be heard. I would also note, however, that probable cause existed for the blood withdrawal, and it would in all likelihood have been authorized by the trial court after a hearing. I, nevertheless, believe that an adversarial proceeding, at the very least, was preferable.

Regardless, our published cases authorize the *ex parte* search warrant process; thus, I consider them controlling authority. *See* Tenn. Sup. Ct. R. 4(H)(2). In addition, even if the trial court erroneously admitted the blood test results, I believe it was harmless in light of the evidence at trial, including the saliva test establishing the matching DNA.

 

 

_____

JOE G. RILEY, JUDGE