IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,  :
                    :       I.D. No. 1701006481 WLW
        v.          :
                    :
DEPAUL WILSON,      :
                    :
        Defendant.  :

Hearing: March 27, 2018
Decided: March 28, 2018

## ORDER

Upon the State's Motion to Compel the
Surgical Removal of a Bullet.
*Denied.*

Stephen R. Welch, Jr., Esquire and Sean A. Motoyoshi, Esquire of the Department of Justice, Dover, Delaware; attorneys for the State of Delaware.

Patrick J. Collins, Esquire of Collins & Associates, Wilmington, Delaware; attorney for Defendant DePaul Wilson.

Suzanne MacPherson-Johnson, Esquire of the Office of the Public Defender, Dover, Delaware; attorney for Defendant Guy E. Jones, Jr.

WITHAM, R.J.

Before the Court is the State's Motion to Compel the Surgical Removal of a Bullet from the Defendant, DePaul Wilson. Mr. Wilson has been indicted for two counts of Murder First Degree; Attempted Robbery First Degree; two counts of Possession of a Firearm During the Commission of a Felony; Possession of a Firearm or Ammunition by a Person Prohibited[1]; and Conspiracy Second Degree. Mr. Wilson opposes the State's motion on the following grounds: (1) removal of the bullet is unnecessary, as other relevant evidence is available; (2) the State has failed to provide any medical testimony that the bullet may be safely removed; and (3) the Defendant's speedy trial rights would be violated if the Court is required to hold an evidentiary hearing in regard to removal of the bullet. In accordance with *Winston v. Lee*, the Court agrees that the State has failed to meet the burden imposed upon it. Therefore, the State's motion is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts are largely not disputed. On January 10, 2017, the police responded to the scene of a shooting at an apartment located in Dover, Delaware. Upon arrival, officers located Javan Cale, lying on the floor of the apartment suffering from several gunshot wounds. On Mr. Cale's lap was a silver 9mm Smith and Wesson semiautomatic handgun. Multiple shell casings of two different types were located inside the apartment, indicating to police that Mr. Cale had exchanged gunfire with another individual or individuals. Witnesses saw two men leave the apartment

---

[1] This charge is severed and to be tried immediately after the main case by agreement of the parties.

matching the descriptions of Mr. Wilson and Mr. Jones, wearing masks and with guns in their possession. One of the black males was walking slowly as if injured and the other male yelled back to him "come on man." Medical personnel arrived on the scene and transported Mr. Cale to the hospital where he was pronounced dead as the result of his injuries.

The morning after the shooting, Detective Stafford from the Middletown Police Department advised Detective Warren of the Dover Police Department that at 8:15 p.m. the previous night, a man, later identified as DePaul Wilson, arrived at Christiana Care Hospital's Middletown facility suffering from multiple gunshot wounds to the lower extremities. Mr. Wilson was transported to Christiana Hospital near Newark, Delaware, but signed himself out and left the hospital before Dover officers arrived there. Detective Warren viewed a CT scan of Mr. Wilson's body in which he could see a projectile in Mr. Wilson's buttocks. Medical records obtained from Christiana Hospital state that Wilson had suffered a "gunshot wound involving the right buttock with bullet lodged within subcutaneous tissue." The records also noted that three small metallic bullet fragments (apparently from a different bullet) were located in Mr. Wilson's left anterior thigh above the knee.

The police later contacted Mr. Wilson at his home in Worton, Maryland. During a post-*Miranda* interview, Mr. Wilson acknowledged being present along with Guy Jones and another individual named Andre Brown, when Javan Cale was shot. Guy Jones also gave a post-*Miranda* statement admitting that he, Wilson, and Brown were at Cale's residence when the shooting occurred. Mr. Jones stated that,

3

at the time of the incident, Mr. Wilson possessed a handgun and had been struck with multiple bullets. Mr. Jones also advised that as they drove from Cale's residence to the hospital, he saw Mr. Wilson's injuries from multiple gunshot wounds and attempted to render medical aid to stop the bleeding. Mr. Jones acknowledged that they dropped Mr. Wilson off at the hospital before driving off.

According to the State, the projectile located in Mr. Wilson's buttocks appears to be the only intact projectile which is in position to be recovered and which seems likely to have been fired from the firearm possessed by Javan Cale.

## THE PARTIES' ARGUMENTS

Relying on numerous cases from other jurisdictions, the State contends that examination of the bullet currently lodged in Mr. Wilson's buttocks could establish that Mr. Wilson was shot by Javan Cale, while participating in an attempted robbery of Mr. Cale. The State believes that such evidence is highly relevant to Mr. Wilson's involvement in the instant case. In addition, the State believes that the bullet may be relevant to establish whether the person who actually shot and killed Javan Cale was Mr. Wilson or Mr. Jones. Thus, the State contends that probable cause exists to believe that the proposed medical procedure would result in recovery of the bullet. Further, the bullet can be recovered in no other way than by surgical removal. And, a hearing is necessary to allow the Court to make an informed determination about the reasonableness of the State's motion to compel the surgical removal of the bullet from Mr. Wilson's buttocks.

In response, Mr. Wilson contends that there is little dispute that he and Mr.

4

Jones were shot by Javan Cale, as both defendants have admitted to being present at the shooting, having gone to the apartment to purchase marijuana. The Defendants' presence was also confirmed by an uncharged cooperator, Andre Brown. Thus, removing the bullet from Mr. Wilson's buttocks does not have any evidentiary value. Secondly, Mr. Wilson contends that the State's motion should be denied because the State has failed to present any expert opinion about the reasonableness of the proposed surgery, even though the State has known about the bullet in Mr. Wilson's buttocks since January 11, 2017. This not only violates *Winston v. Lee*, but also implicates Mr. Wilson's right to a speedy trial. Thus, the State's motion should be denied.

## DISCUSSION

As the parties suggest, the seminal case involving court ordered surgery on a criminal defendant is *Winston v. Lee*, 470 U.S. 753 (1985), where a defendant in Virginia state court, charged with malicious wounding and attempted robbery, was ordered to undergo surgery to remove a bullet lodged under his left collarbone. The defendant alleged that such an intrusion would violate his Fourth Amendment rights. The State, however, argued that the bullet would provide evidence of the respondent's guilt or innocence.

After several unsuccessful attempts to enjoin the court-ordered surgery, the defendant ultimately obtained an order from a federal district court enjoining the surgical procedure. The district court ruling was affirmed by the Court of Appeals

5

for the Fourth Circuit.[2] Upon review, the Supreme Court upheld the ruling, holding that the proposed surgery would violate the respondent's rights to be secure in his person and that the search would be "unreasonable" under the Fourth Amendment.[3]

In reaching its conclusion, the Supreme Court adopted the framework set forth in *Schmerber v. California*,[4] as well as an additional factor that must be specifically considered when the government seeks to retrieve a bullet from a defendant's body.[5] Accordingly, a Court faced with a motion such as the present one must consider four key factors, beyond the probable cause threshold. First, the Court must determine "the extent to which the procedure may threaten the safety or health of the individual."[6] The first criteria is a result of earlier jurisprudence which considered the proposed procedure's threat to the defendant's health.[7] Second, a Court must

---

[2] *See Lee v. Winston*, 717 F.2d 888 (4th Cir. 1983).

[3] *Winston v. Lee*, 470 U.S. at 757-66.

[4] *Schmerber v. California*, 384 U.S. 757 (1966).

[5] *See Winston*, 470 U.S. at 760.

[6] "Notwithstanding the existence of probable cause, a search for evidence of a crime may be unjustifiable if it endangers the life or health of a suspect." *Id* at 761.

[7] For pre-*Winston* cases where the surgical procedure was shown to pose no considerable risk to the defendant, and thus granted, *see, e.g., Hughes v. United State*, 429 A.2d 1339 (D.C. App. 1981) (operations just under the skin of a murder suspect was permitted over the defendant's objections); *United States v. Crowder*, 543 F.2d 312 (C.A.D.C. 1976) (minor wrist surgery constitutionally permissible); and *Doe v. State*, 409 So.2d 25 (Fla. App. 1981) (surgery to remove bullet from below the defendant's skin did not pose a sufficient risk to warrant denial of request).

For instances in which courts denied such requests since the proposed surgery was found to

6

consider the extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity.[8] Third, weighted against the defendant's individual interests, is the community's interest in fairly and accurately determining guilt or innocence. Finally, the government must show a "compelling need for [removal of] the bullet" before the surgery is ordered.[9]

In this case, in light of *Winston's* requirements, the Court is unable to grant the State's request to remove the bullet from Mr. Wilson's buttocks for two distinct reasons. First, the State has failed to provide the Court with any medical evidence that the bullet can be removed safely from Mr. Wilson. The medical records reviewed at the hearing are not enough. The Court cannot justify the removal without some medical evidence to indicate that it can be accomplished with safety. Although the Court acknowledges that it could delay trial to have an expert testify as to the safety of the bullet's removal, the Court declines to do so, especially in light of the fact that the State has been aware of the bullet's existence for more than a year prior to the filing of the State's motion. Second, the Court is unconvinced that the State actually

---

present a possible risk to the defendant, *see, e.g., State v. Allen*, 277 S.C., 291 S.E.2d 459 (1982) (surgery to remove bullet from beneath a defendant's rib was too severe to be permitted as reasonable under the Fourth Amendment); *Bowden v. State*, 256 Ark. 820, 510 S.W.2d (1974) (surgery to remove a bullet from a defendant's spinal canal was deemed improper because of the dangers posed to the defendant); *People v. Smith*, 80 Misc.2d 210, 362 N.Y.S.2d 909 (N.Y. 1974) (surgery to remove bullet from a defendant's back impermissible due to dangers posed).

[8] *Winston v. Lee*, 470 U.S. at 761.

[9] *Id.* at 765.

"needs" the bullet to prove the State's case, as the Court believes that the facts already have established that Mr. Wilson was at the scene of the shooting. The Court understands that the bullet would logically support the fact that Mr. Wilson was present at the scene. However, the Court cannot assume that the location and removal of the bullet can be considered a minor operation without medical evidence. The real question, nevertheless, is who shot Mr. Cale, not who shot Mr. Wilson.

In sum, the State's Motion to Compel the Surgical Removal of a Bullet from Mr. Wilson is **DENIED**. IT IS SO ORDERED.

Hon. William L. Witham, Jr.
Resident Judge

WLW/dmh
oc:   Prothonotary
xc:   Stephen R. Welch, Jr., Esquire
      Sean A. Motoyoshi, Esquire
      Patrick J. Collins, Esquire
      Suzanne MacPherson-Johnson, Esquire