404 So.2d 960 (1981)
STATE of Louisiana
v.
James MARTIN.
No. 81-K-1225.
Supreme Court of Louisiana.
September 28, 1981.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Henry N. Brown, Dist. Atty., R. Harmon Drew, Jr., Asst. Dist. Atty., for plaintiff-relator.
John W. Montgomery, Minden, for defendant-respondent.
KLEES, Justice Ad Hoc[*].
On December 13, 1980, Gloria Martin was shot to death in a domestic dispute with her *961 husband, defendant, James Martin. The defendant received a gunshot wound to the head. Police Investigators at the scene found three pistols belonging either to the decedent or the defendant. The defendant made several inculpatory statements; he admitted shooting his wife and claimed that his wound was self-inflicted.
On January 5, 1981, the defendant was indicted for the second degree murder of his wife, a violation of La.R.S. 14:30.1. He was arraigned and pled not guilty on January 12, 1981. On March 6, the state filed a motion alleging that a bullet imbedded in the defendant's head was probative in the prosecution of this matter, as an analysis of the bullet is essential to establishing its course among the three pistols found at the scene, and requested an order requiring the defendant to submit to a medical examination to determine the feasibility of the surgical removal of this evidence. A hearing was conducted on this motion on April 6, 1981. At the hearing, the state requested the appointment of a three-doctor panel charged to examine the defendant and report on the feasibility of the desired operation. At the hearing the state presented the testimony of Dr. George M. McCormick, III, forensic pathologist and coroner of Bossier Parish and special deputy coroner of Webster Parish. Dr. McCormick testified that he examined the defendant and made x-rays of his person. He found the bullet located between the scalp and defendant's skull and noted that it could be moved about with pressure from a finger and that to do so did not appear to cause the defendant any pain. He concluded by stating that the bullet could be removed in a minor surgical procedure, under local anesthetic, and with minimal risk to the defendant. The trial court denied the state's request. The matter is now before this Court on a writ by the state seeking review of the trial court's rejection of the three-doctor panel. 401 So.2d 359.

ARGUMENT
At the hearing and in brief the state argued that a three-doctor panel was the necessary first step in a procedure designed to best guarantee a proper balance of the defendant's interest in his privacy and health and the state's interest in securing probative evidence, citing for guidance United States v. Crowder, 543 F.2d 312 (D.C.Cir.1976). The trial court rejected this proposal stating:
"There's no Louisiana cases that the computer could find or that the researchers could find in this connection. I do not want to have this parish go to the expense of me appointing and having medical experts testify in this matter when I am not firmly convinced and have doubts in my mind that this procedure requested is authorized, therefore, I'm going to deny the motion of the State."
As the trial judge correctly noted, this Court has yet to consider whether and under what circumstances an accused can be forced to submit to a surgical procedure for the recovery of evidence. Consequently, the jurisprudence of the several state and federal courts may be helpful to this inquiry.
The principal decision by the Supreme Court on the subject of body-intrusion searches is Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In that case the defendant was arrested in a hospital while receiving treatment for injuries received in an automobile accident. The police, without a search warrant or a court order, directed the physician at the hospital to withdraw a sample of blood from the defendant's body. The sample was analyzed and found to contain evidence of alcohol intoxication.
The Supreme Court rejected defendant's claim that his rights to due process and to the privilege against self-incrimination had been violated. It then considered his claim that the body-intrusion violated his fourth amendment right against unreasonable *962 search and seizure. In overruling this contention, the Court stated, "[T]he Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." 384 U.S. at 768, 86 S.Ct. 1834. The Court noted that the police might reasonably believe an immediate seizure was necessary to preserve evidence which the defendant's body might metabolize in the time needed to get a warrant. The Court then observed that the extraction of the blood sample was done according to medically acceptable procedures involving minimal risk to the defendant.
The Court summarized its holding in these words:
"We thus conclude that the present record shows no violation of petitioner's right under the Fourth and Fourteenth amendments to be free of unreasonable searches and seizures. It bears repeating, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions. 384 U.S. at 772, 86 S.Ct. at 1836.
Since Schmerber, several state courts have considered whether and when body-intrusion searches are prohibited by the Fourth Amendment. Most have adopted a case-by-case approach in which the legality of the search turns on its reasonableness under the circumstances. See, e. g., State v. Overstreet, 551 S.W.2d 621 (Mo.1977) (operation unreasonable where insufficient proof that intrusion into buttocks would be harmless and where defendant not afforded (1) an adversary hearing on the need for, and for reasonableness, of intrusion and (2) an opportunity to appeal the order to operate prior to the intrusion); Bowden v. State, 256 Ark. 820, 510 S.W.2d 879 (1974) (search warrant authorizing removal of a bullet from the accused's spinal canal unreasonable where operation would result in a major intrusion involving trauma, pain, a risk of serious complications and the possible loss of life); Creamer v. State, 229 Ga. 511, 192 S.E.2d 350 (1972), (trial court order to remove bullet from subcutaneous fat of the right side of chest not unreasonable where procedure required only local anesthetic and presented "no risk" to the defendant.) But see, Adams v. State, 260 Ind. 663, 299 N.E.2d 834 (1973) cert. denied sub nom. Indiana v. Adams, 415 U.S. 935, 94 S.Ct. 1452, 39 L.Ed.2d 494 (1974) (court found that court ordered surgical removal of bullet fragments violated the Fourth Amendment and adopted a rule declaring all such procedures as per se violative of the Fourth Amendment.)
In United States v. Crowder, 543 F.2d 312 (D.C.Cir.1976) cert. denied, 429 U.S. 1062, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977) the Circuit Court affirmed a surgical search procedure in which a bullet was removed from the defendant's forearm. The bullet was "lying superficially beneath the skin", and the operation was judged to entail no risk of harm or injury. In finding the procedure reasonable and justified under the circumstances, the Court noted that it considered the following salient factors: (1) the evidence sought was relevant, could have been obtained in no other way, and there was probable cause to believe that the operation would produce it; (2) the operation was minor, was performed by a skilled surgeon, and every possible precaution was taken to guard against any surgical complications, so that the risk of permanent injury was minimal; (3) before the operation was performed the trial court held an adversary hearing at which the defendant appeared with counsel, and (4) thereafter, and before the operation was performed, the defendant was afforded an opportunity for appellate review.
We find that the procedure proposed by the state in this case is reasonable and likely to afford the defendant protection of his rights and health. In our opinion the *963 prosecuting authorities have made a well reasoned and commendable effort to establish a basis for searches of this kind. The trial court's ruling while reflecting caution commendable in such a sensitive area, is in error.
For the reasons assigned, this matter is remanded to the trial court for further proceedings consistent with this decision.
NOTES
[*] Judges E. L. Guidry, Jr., and G. William Swift, Jr., of the Court of Appeal, Third Circuit, and Judge Robert J. Klees of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices ad hoc, joined by Associate Justices Pascal F. Calogero, Jr., James L. Dennis, Jack C. Watson, and Harry T. Lemmon.