**Ex parte Bruce Edward MOORE, Appellant.**

**No. 3–85–107–CR.**

Court of Appeals of Texas, Austin.

July 3, 1985.

---

Mike Berg, Lockhart, for appellant.

Jeffrey Van Horn, Dist. Atty., Lockhart, for appellee.

Before POWERS, EARL W. SMITH and CARROLL, JJ.

EARL W. SMITH, Justice.

Appellant filed an application for writ of habeas corpus in the trial court in which he asserted that further prosecution of cause no. 9306, now pending in the district court of Caldwell County, is barred by double jeopardy. The writ issued and after a hearing, the trial court, the Honorable Charles R. Ramsay, judge presiding, refused to dismiss the prosecution. This appeal followed.[1] *See Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Ex parte Robinson,* 641 S.W.2d 552 (Tex.Cr.App.1982); *Ex parte Gonzales,* 667 S.W.2d 932 (Tex.App. 1984, pet. ref'd). Because we find appellant's jeopardy claim to be meritorious, we order the cause dismissed.

Cause no. 9306 was called for trial at 9:00 a.m. on Monday, May 6, 1985. By noon that day, a jury had been impaneled and sworn, and the cause was recessed until the following morning. On Tuesday, May 7, several defensive motions were disposed of and testimony began. After three witnesses had testified, the prosecutor informed the trial court that the State's last witness, the complainant Malcolm Short, was not present to testify. The court recessed the trial until Wednesday morning.

■ At 9:00 a.m. on Wednesday, May 8, the following proceedings took place:

THE COURT: Is the State ready to proceed?

MR. KRAMPITZ [assistant district attorney]: Your Honor, I don't see our complaining witness here.

---

1. On May 17, 1985, pursuant to our authority under Tex.Rev.Civ.Stat.Ann. art. 1823 (1964), this Court ordered the court below not to proceed to trial during the pendency of this appeal.

THE COURT: You have not heard from him—didn't hear from him last night or this morning?

MR. KRAMPITZ: The only communication that the State has had is that I got a telephone call last night about ten o'clock, and a message was related to me from the sheriff's department that Mr. Short—or that contact had been with Mr. Short through his girlfriend, I believe, and that, as of last night, he was still in Dallas but was to be here by nine this morning, and I believe we got another phone call this morning from the sheriff's office that said he was supposed to be here at nine.

MR. VAN HORN [district attorney]: He is checking with somebody in the clerk's office.

THE COURT: The sheriff?

MR. VAN HORN: Yes.

. . . . .

MR. HOSKINS [sheriff]: Judge, I just called Dallas. He left there at six this morning, and he said he was going to be here by nine o'clock. That is all I know.

THE COURT: That is what he said yesterday.

. . . . .

MR. BERG [defense counsel]: Judge, it is our understanding that this case was to resume at 9 a.m. It is now 9:15, and we would ask the Court to call the case and proceed. The defendant is ready.

THE COURT: There is a good chance we could just wait and he wouldn't show up, so I am going to go ahead and discharge the jury.

MR. VAN HORN: I don't see any harm in waiting 45 minutes to see whether he is—according to the last word we have, whether he is going to be delivering on that. It should be a four-hour trip from Dallas if he in fact left at six. If an hour from now he does walk in here, then all of our time is wasted so far.

As far as I know, this is through no fault of the State. The State has had him properly subpoenaed and had him on standby, supposedly. I am not aware

that any writ of attachment has been issued to enforce his appearance by having him actually picked up and brought before the Court. I would object at this point to discharging the jury at this time since we are this far along in the case.

. . . . .

THE COURT: I am going to discharge the jury. That is what I said I would do yesterday if he wasn't here by nine o'clock. Bring the jury in, please.

MR. BERG: Your Honor, if I could get a little clarification—is this going to be a dismissal of the charges on sufficiency grounds?

THE COURT: Yes, the case will be dismissed. Isn't double jeopardy attached?

MR. VAN HORN: Your Honor, what more can the State do? We can't go and babysit each one of these witnesses. This man shouldn't walk away just because the witness was properly subpoenaed and didn't show up and particularly when we have the indication that he may be here 45 minutes from now.

THE COURT: Two things: He said—the word we got was that he would be here yesterday. Also, yesterday afternoon, I said I would discharge the jury, and you did not say you had any objection to it at that time.

MR. VAN HORN: Well, I didn't know it was going to be a dismissal of the case, Your Honor. I thought maybe the Court was going to grant a mistrial and re-try the case.

THE COURT: I don't see how I could grant a mistrial.

MR. BERG: We are not requesting a mistrial at this point, and we oppose a mistrial motion if the State is making a motion for mistrial at this point. We ask the Court to call the case, get the evidence on. If the State has no more evidence here to offer, then the—

After further discussion, the court agreed to give the witness one more hour. At 10:00 a.m., when Short had still not appeared, the trial court entered the following order:

THE COURT: All right, I will discharge the jury. I don't know whether or not I have the authority to declare a mistrial, but I will declare a mistrial at this time, give both sides an opportunity to brief the question, and if I have the authority to grant a mistrial and allow the State to re-try, I will do that, and you can present a brief on the question.[2]

On May 13, 1985, after a second trial of cause no. 9306 was set for May 20, appellant filed his application for writ of habeas corpus. At the hearing held on the writ, Short testified he had been subpoenaed to appear in court on Monday, May 6. On this subpoena, a copy of which appears in the record, the following stamped notation appears:

> Please call the criminal district attorney's office at (512) 398–5211 on 5–6–85 at 9:00 a.m. and you will be instructed whether or not you will need to appear.

Short testified he called the district attorney's office as instructed, was told that it was not certain his case would be reached that day, and informed that, if he were needed, the district attorney's office would call him.

Short testified that this was the third subpoena he had received to appear in this cause; on both prior occasions, the trial had been reset. Similarly, the separate trial of appellant's co-defendant, at which Short had also testified, had been reset several times. When, by 3:45 Monday afternoon, Short had not heard from the district attorney's office, he assumed that the case had again been reset and left for Dallas. Short did not check in with the district attorney's office before leaving.

Short testified he did not learn that he was needed in Lockhart to testify until 11:00 Tuesday morning. Explaining without further elaboration that he was "stranded," Short did not leave Dallas until 5:30 a.m. on Wednesday, May 8. Short arrived in the district clerk's office in Lockhart at 11:15 a.m. the same day.

Gail Ferguson, the secretary in the Caldwell County district attorney's office, testified that for the convenience of witnesses, that office routinely places a stamped message on subpoenas instructing the witness to call before making the trip to the courthouse. Ferguson testified that when Short telephoned on Monday morning, May 6, she told him "I did not know what cases would go, but that I could call him when we needed him." Short did not inform Ferguson of the possibility that he would be leaving for Dallas.

Ferguson further testified she did not learn that a jury had been selected in cause no. 9306 until 5:00 Monday afternoon, and that she made no effort to contact Short until the following morning.[3] When Ferguson called Short's residence at 10:00 Tuesday morning, she was told by Short's fiancee that Short had gone to Dallas.

Assistant district attorney Tom Krampitz testified he was aware that Short was not present in court on May 6, when jury selection began. Krampitz knew, however, that Short had been subpoenaed and "assumed" he would remain in Caldwell County. Although the district attorney's office had learned that Short was in Dallas before testimony began on May 7, the decision was made to proceed because at that time it was believed that Short would return to Lockhart that afternoon. For the same reason, it was decided not to seek a writ of attachment.

 Once jeopardy attaches, as it did for appellant when the jury was impaneled and sworn to try this case, *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), *McElwee v. State*, 589 S.W.2d 455 (Tex.Cr.App.1979), the defendant possesses a valued right to have his guilt or inno-

---

**2.** Despite the apparent belief of the court and parties to the contrary, it does not matter for jeopardy purposes whether the trial court characterizes its termination of a trial a declaration of mistrial or a dismissal of the indictment. *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977); *Durrough v. State*, 620 S.W.2d 134, 137 n. 1 (Tex.Cr.App.1981).

**3.** It will be recalled that the jury had been impaneled and sworn by noon on May 6, almost four hours before Short left for Dallas.

cence determined before the first trier of fact. *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949). An exception to this rule is made if the defendant consents to a retrial, or if a retrial before a new jury is mandated by some form of manifest necessity. *Arizona v. Washington, supra; Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824); *McClendon v. State*, 583 S.W.2d 777 (Tex.Cr.App. 1979); *Chvojka v. State*, 582 S.W.2d 828 (Tex.Cr.App.1979); *Allen v. State*, 656 S.W.2d 592 (Tex.App.1983, no pet.).

▮ The crucial inquiry in the present case is whether there was a manifest necessity for a mistrial, because it is undisputed that appellant did not consent. The general principles by which the correctness of a trial judge's *sua sponte* declaration of a mistrial must be judged were established in *United States v. Perez, supra*. Trial courts have the power to declare a mistrial, "whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.... [T]he power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes" and in the exercise of "sound discretion." 22 U.S. (9 Wheat.) at 580. In *Arizona v. Washington, supra*, the Supreme Court again emphasized that because the mistrial decision affects a constitutionally protected right, there must be a high degree of necessity that trial come to an end, and a reviewing court must determine that the trial judge did not act irrationally or irresponsibly, and that the mistrial order reflects the exercise of sound discretion. Although each case must turn on its own facts, *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), sound discretion normally requires the trial judge to consider

less drastic alternatives to a mistrial, and he must give adequate consideration to the defendant's right against double jeopardy before declaring a mistrial. *Torres v. State*, 614 S.W.2d 436 (Tex.Cr.App.1981).

In *Cornero v. United States*, 48 F.2d 69 (9th Cir.1931), the jury selected at the defendant's first trial was discharged when prosecution witnesses, who had not been subpoenaed, failed to appear to testify and could not be located during a five-day continuance. The defendant was convicted at a second trial. In reversing, the court of appeals stated:

> The fact is that, when the district attorney impaneled the jury without first ascertaining whether or not his witnesses were present, he took a chance. While their absence might have justified a continuance of the case in view of the fact that they were under bond to appear at that time and place, the question presented here is entirely different from that involved in the exercise of the sound discretion of the trial court in granting a continuance in furtherance of justice. The situation presented is simply one where the district attorney entered upon the trial of the case without sufficient evidence to convict. This does not take the case out of the rule with reference to former jeopardy.

48 F.2d at 71.

This passage was quoted as stating the governing principle in *Downum v. United States, supra*. In *Downum*, the jury first selected and sworn to try the defendant was discharged when the prosecutor discovered that a key witness had not been served with a summons and no other arrangements had been made to assure his presence. Two days later, the defendant was tried before a second jury and convicted. The Supreme Court reversed this conviction, holding that the second trial violated the guarantee against double jeopardy. The Court expressly refused to say, however, that the absence of a prosecution witness can never justify discontinuance of

a trial, emphasizing that each case must turn on its own facts.

The *Cornero* opinion was also quoted with favor in *McClendon v. State, supra.* In that case, the State discovered after testimony had begun that it did not have any witness present who could testify that the deceased was known by the name alleged in the indictment. The victim's wife was in Louisiana, and no effort had been made to bring her to the trial. For that reason, the State moved to dismiss and the trial court granted the motion. The defendant was reindicted, tried, and convicted by a second jury after his special plea of prior jeopardy was overruled. On appeal, the conviction was reversed, the court holding:

> The facts of the case before us are materially the same as in *Downum.* The State went to trial without a necessary witness.... In fact, by its own admission the State made no attempt to secure the witness before trial. No "manifest necessity" is presented which would justify subjecting appellant to jeopardy twice. Indeed, in *Arizona v. Washington, [supra],* the Supreme Court reaffirmed that unpreparedness on the part of the prosecution would require "the strictest scrutiny" of the dismissal of a trial. 98 S.Ct. at 832.

583 S.W.2d at 780.

■ Unlike the missing witnesses in *Cornero, Downum,* and *McClendon,* the complaining witness in the instant cause was served with a subpoena prior to trial. However, the prosecutor released the witness from his obligation to appear pursuant to the subpoena, and allowed him to remain at large on "stand-by" status. Furthermore, when it became clear that the cause would be tried, the prosecutor failed to promptly inform the complaining witness that his testimony would be needed. In the words of *Cornero,* the prosecutor "took a chance" when he proceeded to trial, and he is in no position to assert the subsequent

absence of the witness as manifest necessity for the mistrial.

We are also of the opinion that adequate consideration was not given to appellant's right against double jeopardy before the mistrial was declared. The problem of the missing witness was first brought to the trial court's attention on Tuesday afternoon. Although the witness failed to appear on Wednesday morning as originally promised, a continuance until Wednesday afternoon would not have unduly delayed the trial and would have given the witness ample time to reach Lockhart if he had, as reported, left Dallas at 6:00 that morning.[4] The record also reflects that a writ of attachment was neither requested nor issued until after the mistrial was ordered.

We hold that no manifest necessity is present in this case which would justify subjecting appellant to double jeopardy. The order of the trial court denying appellant's requested relief is vacated, and cause no. 9306 is hereby ordered dismissed.

---

4. As previously noted, the complaining witness arrived in Lockhart one hour after the mistrial was declared.