**Kirk Wayne McBRIDE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 3–90–288–CR to 3–90–291–CR.**

Court of Appeals of Texas,
Austin.

Oct. 7, 1992.

Rehearing Overruled Nov. 4, 1992.

Discretionary Review Refused
(Appellant) Dec. 23, 1992.

Discretionary Review Refused
(State) Dec. 23, 1992.

Wade Arledge, New Braunfels, for appellant.

Bill M. Reimer, Dist. Atty., Robert H. Fisher, Asst. Dist. Atty., Comal County, New Braunfels, for appellee.

Before ABOUSSIE, KIDD and ONION,* JJ.

ONION, Justice (Assigned).

These appeals are taken from convictions for the offense of sexual assault, two offenses of aggravated sexual assault, and the offense of aggravated kidnapping. After finding the appellant guilty of the four offenses, the jury found that appellant had been convicted of a prior felony offense and assessed punishment at ninety-nine years.[1] The offense of sexual assault and aggravated kidnapping were both second-degree felonies[2] but the punishment was assessed as a first-degree felony in each case because of the finding that appellant had been once previously convicted of a felony. See Tex.Penal Code Ann. § 12.-42(b) (West 1974). In the aggravated sexual assault offenses, both first-degree felonies, the punishment was assessed under Tex.Penal Code Ann. § 12.42(c) (West Supp.1992).

Appellant advances eight points of error. We will not detail each of the points of error as we are compelled to sustain appellant's seventh point of error complaining of the improper admission of evidence of appellant's blood seized without a search war-

---

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. See Tex.Gov't Code Ann. § 74.003(b) (West 1988).

1. The cases were consolidated for trial without objection.

2. See Tex.Penal Code Ann. § 22.011(f) (West 1974) (sexual assault); Tex.Penal Code Ann. § 22.04(b) (West 1974) (aggravated kidnapping) (The offense is a first-degree felony unless the actor voluntarily releases the victim alive and in a safe place, in which event aggravated kidnapping is a second-degree felony).

rant in violation of the constitution, statutes, and caselaw of this State.

A brief recitation of the facts is necessary to place our discussion in proper perspective. In addition to her regular job, the complainant worked part-time at Tyler's Restaurant in New Braunfels. On Saturday, January 13, 1990, she saw the appellant for the first time when he came to the restaurant and asked to see the manager. After Tyler's closed at 1:00 a.m. on Sunday, January 14, 1990, the complainant, the manager of Tyler's, and another employee decided to go to a birthday party to which they had been invited. They went in separate vehicles and arrived at the party about 2:00 a.m. The complainant did not know many of the individuals at the party. She spoke mostly with her fellow employees, although at one point appellant did briefly try to engage her in conversation.

After an hour or so, the complainant decided to leave the party and go home. As she was leaving, appellant asked for a ride home, which he said was only a few blocks away. The complainant looked at her fellow employees and at an old customer of Tyler's. No one suggested any need for caution. She consented to take appellant home.

Appellant gave confusing directions to his "home," but finally directed the complainant to pull into a driveway at 2339 Michigan. At this point, appellant placed a knife approximately ten inches long to her head. The complainant tried to get out of the car, but was restrained by her seat belt. As she got loose, appellant grabbed her, ripping her shirt and her bra. She fell to the ground. Appellant pulled down her pants and underwear. He anally raped the complainant. When the appellant's attention was diverted, the complainant tried to escape in her car. Appellant pulled out a car window in the struggle to control the car. Appellant gained control of the car and drove to Schwab Road where he raped the complainant both vaginally and anally and orally sodomized her. Appellant then drove back to 2339 Michigan to look for the knife he had left there. Finding the knife, he drove the complainant back to the Schwab Road location. He again vaginally and anally raped the complainant in the car. When the appellant got out and walked toward a nearby fence, the complainant found a spare car key in her purse and tried to start the car. But appellant returned, hit her with his fist, pushed her over and drove into New Braunfels. He remarked that the complainant needed stitches in her hand cut during their initial struggle. However, instead of taking her to a hospital, appellant returned to Schwab Road where the complainant was vaginally raped again. Thereafter, appellant drove back into New Braunfels, and offered the complainant money for her silence about the multiple rapes. He then got out of the car and left. By this time, it was approximately 7:00 a.m. on Sunday morning.

The complainant drove around until she spotted a deputy sheriff's patrol vehicle and blocked its progress. Deputy Ricardo Cardenas observed the complainant's condition and her injuries. He contacted Emergency Medical Services.

Dr. Gary Bird performed a rape examination on the complainant and prepared a rape kit. New Braunfels Police Detective Ray Douglas interviewed the complainant, who described and named the appellant as her assailant. She was able to assist Douglas in collecting evidence at the scenes of the rapes. Douglas testified that by virtue of a court order he took the incarcerated appellant to a hospital to have appellant's blood taken. No effort was made to obtain appellant's consent. Fred Zain, chemist with the Bexar County Medical Examiner's Office, testified that he performed a DNA analysis process and that appellant's blood matched the semen found on the complainant's panties.

Appellant's hat and the complainant's cigarette case were found by Officer Kevin Stevens in the vicinity of 2339 Michigan during an investigation of a call about a reckless driver who had damaged property. The hat was identified as one appellant wore at the party before he departed in the company of the complainant.

Appellant's cousin and his grandparents testified that appellant was at the grand-

parents' home in New Braunfels about 5:30 or 6:00 a.m. on the Sunday morning in question.

In point of error number seven, we are confronted with the most serious question in the case. Appellant argues that the "trial court erred in overruling appellant's objection to evidence seized as a result of a motion that was insufficient to comply with the code requirements to seize appellant's blood while in custody prior to indictment."

Appellant complains that his blood was seized by virtue of an order granting a motion to take blood rather than by a search warrant meeting the requirements of the Texas Code of Criminal Procedure. A similar contention was one of the bases for reversal in *Davis v. State*, 831 S.W.2d 426, 440–41 (Tex.App.—Austin 1992, pet. ref'd), also a Comal County case. Appellant filed a pretrial motion to suppress the blood evidence. It was heard and overruled. Further objection at trial was unnecessary. *Davis*, 831 S.W.2d at 441; Tex. R.App.P. 52(b). Nevertheless, when evidence of the matching of the seized blood with the semen on the complainant's panties was offered, appellant timely objected on the same basis as now urged in this appeal, preserving the error for review.

■ The taking of a defendant's blood is a search and seizure under federal and state law. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Gentry v. State*, 640 S.W.2d 899, 902–03 (Tex.Crim.App.1982); *Ferguson v. State*, 573 S.W.2d 516, 520 (Tex.Crim.App.), *cert. denied*, 442 U.S. 934, 99 S.Ct. 2870, 61 L.Ed.2d 304 (1979). In *Escamilla v. State*, 556 S.W.2d 796, 798 (Tex.Crim.App.1977),

the court held that "the taking of a blood sample is a search and seizure within the meaning of Art. I, § 9 of the Texas Constitution, thus the State was required to comply with the provisions of Art. 1.06 and Chapter 18, V.A.C.C.P." In so holding, the Court of Criminal Appeals expressly followed the lead of the United States Supreme Court in *Schmerber*. The *Escamilla* decision rejected the proposition that a defendant's blood could be taken by a court order based on an unsworn motion pursuant to Rule 167a of the Texas Rules of Civil Procedure. In *Smith v. State*, 557 S.W.2d 299, 301 (Tex.Crim.App.1977), the Court again rejected the notion that a defendant's blood could be seized by a court order granting any kind of motion. The *Smith* Court held that to seize blood, a search warrant must be obtained. The Court noted, however, that a search warrant notwithstanding, the taking of blood was not grounds for the issuance of a search warrant under the existing chapter 18 of the Texas Code of Criminal Procedure. Later, in *Gentry v. State*, 640 S.W.2d at 902–03, the Court observed that while blood was not specifically itemized in the statutes providing that a search warrant may be issued to search and seize certain property or items, blood was nonetheless an "item of evidence" for which a search warrant may issue in light of the 1977 amendments to Articles 18.01 and 18.02 of the Texas Code of Criminal Procedure.[3] Thus, absent consent, the taking of a blood sample from a defendant in custody requires a valid search warrant obtained in accordance with article 1.06 and chapter 18 of the Texas Code of Criminal Procedure.[4] *Washington*

---

**3.** *See* Act of May 12, 1977, 65th Leg. R S. Ch. 237, 1977 Tex.Gen.Laws 640 (Tex.Code Crim. Proc.Ann. arts. 18.01, 18.02, since amended).

**4.** In *Davis*, 831 S.W.2d at 440, this Court stated: A warrant may be issued to search for and seize property or items that are evidence of an offense or which tend to show that a particular person committed an offense. Tex.Code Crim.Proc.Ann. art. 18.02(10) (Supp.1992). To justify the issuance of a search warrant under article 18.02(10), there must be a supporting affidavit setting out sufficient facts to establish probable cause that a specific offense has been committed, that the specifical-

ly described property or items that are to be searched for or seized constitute either evidence of that offense or evidence that a particular person committed that offense, and that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched. Tex.Code Crim.Proc.Ann. art. 18.-01(c) (Supp.1991). *Compare Mulder v. State*, 707 S.W.2d 908, 915–16 (Tex.Crim.App.1986) (affidavit for a search to take a blood sample held insufficient) *with Marquez v. State*, 725 S.W.2d 217, 233–34 (Tex.Crim.App. (affidavit held sufficient), *cert. denied*, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987).

*v. State*, 822 S.W.2d 110, 113 (Tex.App.— Waco 1991, pet. granted *on other grounds*); *Longoria v. State*, 636 S.W.2d 521, 522 (Tex.App.—Texarkana 1982, pet. ref'd). A motion alone will not pass muster. *Smith*, 557 S.W.2d at 301; *Washington*, 822 S.W.2d at 113.

▇ In the instant case, after the appellant was in custody, but prior to any indictment invoking the jurisdiction of the district court, the State filed a "Motion For Blood And Hair Samples" in the 22nd Judicial District Court. The motion stated that appellant was a suspect and charged with aggravated sexual assault and that the State requested an order allowing "police officials" to acquire blood and hair samples from the appellant. The motion was signed by the district attorney. The attached affidavit stated:

> I, RAY DOUGLAS being over the age of eighteen (18) years and having and having [sic] personal knowledge based upon my investigation of the same do hereby affirm all statements in the above motion are true and correct, and that KIRK WAYNE McBRIDE is a suspect in a [sic] AGGRAVATED SEXUAL ASSAULT case in Comal County, Texas.
>
> /s/ Ray Douglas
> RAY DOUGLAS
> New Braunfels Police Department

The affidavit does not establish probable cause to issue a search warrant. The affidavit and motion suffer the same defects as the motion and affidavit in *Davis*, 831 S.W.2d at 440. A supplemental statement of facts reveals that a hearing was held on said motion on January 19, 1990, in the 22nd Judicial District Court. Whether the judge presiding was sitting as a district judge or magistrate is not revealed. During the hearing, the judge called the district attorney's attention to the provisions of Tex.Code Crim.Proc.Ann. art. 18.01(b) and (c), art. 18.02(10) (West Supp.1992). The judge adjourned the hearing to give the district attorney "time to amend his

motion to the extent he desires....:" No further hearing appears in the record. It does not appear that either the motion or affidavit was amended.

On January 22, 1990, the following order was entered:

> It appearing to the Court that the Motion for blood samples and hair samples is in order and necessary is hereby ORDERED that the same should be granted. [sic]

The order was signed by the judge as "Judge Presiding." We do not find that any search warrant was ever issued. The motion and affidavit do not meet the requirements of Tex.Code Crim.Proc.Ann. art. 18.01(c) (West Supp.1992) for the issuance of a search warrant pursuant to Tex.Code Crim.Proc.Ann. art. 18.02(10) (West Supp.1992).[5]

▇ The record shows that appellant's blood was taken pursuant to the order granting the motion and without his consent while appellant was in custody. The trial court erred in admitting the blood evidence. As earlier noted, appellant properly preserved the error for review. The only question remaining is whether the error was harmless in view of Tex.R.App.P. 81(b)(2) which provides:

> (2) *Criminal Cases.* If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

In *Anderson v. State*, 817 S.W.2d 69, 72 (Tex.Crim.App.1991), the Court wrote:

> Tex.R.App.Proc. 81(b)(2) mandates that we reverse the judgment under review unless we determine beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. In *Harris v. State*, 790 S.W.2d 568 (Tex.Cr.App.1989), we articulated a coherent standard for determining when

5. The State calls attention to the fact that in addition to the motion and affidavit the supplemental transcript contains a felony complaint filed in a justice court and an unsigned investi- gation report. When these instruments were made a part of the record, if ever, is not made clear. Neither the motion nor affidavit makes reference to the instruments.

an error is harmless. We do not determine harmlessness simply by examining whether there exists overwhelming evidence to support the verdict of guilt, but rather calculate as much as is possible the probable impact of the error on the jury in light of the existence of the other evidence. "A procedure for reaching this determination should: first, isolate the error and all its effects, using the considerations set out above and any other considerations suggested by the facts of an individual case; and second, ask whether a rational trier of fact might have reached a different result if the error and its effects had not resulted." *Id.* at 588. In performing the isolating analysis, we examine the source and nature of the error, whether or to what extent it was emphasized by the State, its probable collateral implications, and consider how much weight a juror would probably place upon the error and determine whether declaring it harmless would encourage the State to repeat it with impunity. *Id.* at 587.

*See also Orona v. State*, 791 S.W.2d 125, 130 (Tex.Crim.App.1990).

The nature and the source of the error was the trial court's ruling, over objection, that the blood evidence was admissible. That testimony showed that appellant's seized blood was used in a DNA fingerprint process by a chemist who was then able to testify that the blood matched the semen found on the panties worn by the complainant at the time of the alleged offenses. As to the extent of the State's emphasis on the erroneously admitted evidence, we observe that it was utilized twice by the prosecutor in his jury argument at the guilt-innocence phase of the trial. In his opening argument, the prosecutor called attention to "our scientific evidence"—the chemist's testimony that appellant's blood matched the semen found on the complainant's panties. In his closing argument, the prosecutor noted that appellant's counsel had talked about "holes in the State's case." He responded that the State had proved the elements of the offenses beyond a reasonable doubt based on the complainant's testimony and the physical evidence corroborat-

ed by scientific evidence. "As Mr. Zain (chemist) told you, Kirk McBride was there." In effect, the jury was told that if it had any doubt about appellant's participation in the offenses or whether the State had sustained its burden of proof, all the other evidence had been corroborated by "scientific evidence," which was based solely on the erroneously admitted blood evidence.

■ If the wealth of the evidence of guilt was the only thing to be considered in determining harmfulness, *cf. Ferguson*, 573 S.W.2d at 521, the issue presented would not be difficult, but we are admonished by the Court of Criminal Appeals that it is the effect of the error and not the existence of overwhelming evidence or the lack thereof that governs our judgment in assessing harmless error. *Anderson*, 817 S.W.2d at 73; *Orona*, 791 S.W.2d at 130.

In summary, the reviewing court should focus not on the weight of the other evidence of guilt, but rather on whether the error at issue might possibly have prejudiced the jurors' decision-making; it should ask not whether the jury reached the correct result, but rather whether the jurors were able properly to apply law to facts in order to reach a verdict. Consequently, the reviewing court must focus upon the process and not on the result. In other words, a reviewing court must always examine whether the trial was an essentially fair one. If the error was of a magnitude that it disrupted the juror's orderly evaluation of the evidence, no matter how overwhelming it might have been, then the conviction is tainted. Again, it is the effect of the error and not the other evidence that must dictate the reviewing court's judgment.

*Harris*, 790 S.W.2d at 587–88.

■ Blood does not change. It may well be argued that in the event of a retrial, a proper search warrant may be secured for the seizure of appellant's blood, and in a second trial the evidence will be the same. We must consider, however, whether declaring the error here harmless would encourage the State to repeat the error with

impunity along with the argument above. *Cf. Davis*, 831 S.W.2d at 426. If a "motion practice" in securing blood samples from incarcerated defendants without their consent is always harmless error, then certain constitutional guarantees may be rendered impotent. Since 1977, the caselaw of this State has made it abundantly clear that blood cannot be seized from an incarcerated non-consenting defendant through an order granting some kind of motion. This is old law, not new law, and should be known to every prosecutor in Texas.

■ The facts and circumstances of each case must be reviewed in determining whether a trial court committed harmful error in admitting improper evidence. *Bird v. State*, 692 S.W.2d 65, 70 (Tex.Crim. App.1985), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986); *Dumas v. State*, 812 S.W.2d 611, 615 (Tex.App.— Dallas 1991, pet. ref'd). The blood sample here was important forensic evidence, and we are unable to declare beyond a reasonable doubt that its erroneous admission made no contribution to appellant's conviction or punishment. *See* Tex.R.App.P. 81(b)(2); *see also Davis*, 831 S.W.2d at 441. Point of error number seven must be sustained as to all four convictions.

In view of our compelled disposition of point of error number seven, we do not deem it necessary to address the other points of error save the double jeopardy claims. In his first point of error, appellant contends that the trial court violated his "right to be free from double jeopardy when it improperly terminated the first trial of cause number CR–90–029 (sexual assault offense)." Apparently, appellant is arguing that double jeopardy attached when the trial court "improperly terminated" the first trial when the jurors were discharged without being sworn, and that he should not have been put to trial the second time on the sexual assault offense. In this particular point of error, appellant does not direct our attention to any ruling at the instant trial of which he complains. *See* Tex.R.App.P. 74(f).

■ In a jury trial, jeopardy attaches when the jury is impaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 37–38, 98 S.Ct. 2156, 2161–62, 57 L.Ed.2d 24 (1978); *McElwee v. State*, 589 S.W.2d 455, 456–57 (Tex. Crim.App.1979); *see also Sewell v. State*, 696 S.W.2d 559, 560 (Tex.Crim.App.1983); *Ex parte Moore*, 695 S.W.2d 715, 718 (Tex. App.—Austin 1985, no pet). The jury at the first trial on the sexual assault charge was never sworn. Appellant was not placed in jeopardy. Appellant notes, however, his objections to the failure of the trial court to swear the jury. He does not present argument or cite authorities that timely objections would call for a different result. Moreover, appellant's objections were not timely. Tex.R.App.P. 52(a). When the jury was selected at the first trial and placed in the jury box, the trial court informed them that they would not be sworn at that time and released them until the next day. After the jurors left the courtroom, appellant objected to the failure of the trial court to administer the oath to the jurors. The next day, the trial court granted a portion of appellant's motion to quash the indictment. When the State decided to either reindict the appellant or seek an extensive amendment to the indictment, the appellant refused to waive any ten-day preparation period accorded him. *See* Tex.Code Crim.Proc.Ann. art. 28.10 (West.1989).[6] At this point, the trial court announced that it was "going to let the jury go." Appellant's counsel replied "Okay." After the unsworn jurors were discharged and had departed the courtroom, appellant unsuccessfully objected to the trial court's action in discharging the jurors without first swearing them. Not only were the objections untimely, but by agreeing to the jury's discharge the appellant waived any error. The first point of error is overruled.

In his second point of error, appellant urges that the improper termination of the first trial afforded the prosecution a more favorable opportunity to convict him in that the main defense witness, available at the

6. As to the validity of an amendment to the indictment on the day of trial, *see Sodipo v.*

*State*, 815 S.W.2d 551, 555–56 (Tex.Crim.App. 1991) (op. on rehearing).

time of the first trial, had since "disappeared out-of-state." The point of error is based on the flawed premise that there was an improper termination of the first trial. Moreover, appellant did not object at the instant trial on the basis now urged on appeal. Tex.R.App.P. 52(a). The second point of error is overruled.

In points of error numbers four and five, appellant contends that the trial court erred in overruling his "special plea," and in not submitting the same to the jury. In his appellate brief, appellant does not identify the "special plea" or direct our attention to any ruling of the trial court thereon. There has been no compliance with Tex. R.App.P. 74(d) and (f)(1). *See Leberta v. State,* 770 S.W.2d 828, 833 (Tex.App.—Fort Worth 1988, pet. ref'd); *see also Castillo v. State,* 810 S.W.2d 180, 182, n. 1 (Tex.Crim. App.1990); *Robinson v. State,* 764 S.W.2d 367, 372 (Tex.App.—Dallas 1989, pet. ref'd).

Our own search of the record reveals a special plea based on Tex.Code Crim.Proc.Ann. 27.05 (West 1989) and alleging improper termination of the first prosecution for the sexual assault offense. Such a plea of former jeopardy constitutes only a pleading and does not establish as true the issues of fact alleged therein. *Anderson v. State,* 635 S.W.2d 722, 725 (Tex.Crim.App.1982). The burden of proof was on the appellant by a preponderance of the evidence. *Berrios-Torres v. State,* 802 S.W.2d 91, 95 (Tex.App.—Austin 1990, no pet.). The special plea was read to the jury, Tex.Code Crim.Proc.Ann. art. 36.-01(a)(2) (West Supp.1992), and the appellant later offered the testimony of an assistant district attorney in support of the special plea. Any issue of fact presented by the special plea is to be determined by the trier of fact. *Rodriguez v. State,* 466 S.W.2d 788, 788 (Tex.Crim.App.1971). The testimony offered by the appellant did not, however, raise any fact issue for the jury. The question of the "improper termination" in the instant case was a question of law for the trial court to decide. *See Loftin v. State,* 624 S.W.2d 351, 353 (Tex.App.—Dallas 1981, pet. ref'd). We have, however, found no specific ruling by the trial court.

In a colloquy with the attorneys, the trial court did indicate in passing that there was no double jeopardy since the first jury had not been sworn, and that there would be no issue for the jury to decide in the second trial. Finding no merits to appellant's contentions, we overrule the fourth and fifth points of error.

Though not raised, we observe, in the event of a re-trial, certain discrepancies in the allegations of the prior convictions and variances in the proof. The indictments in all four cases alleged the same three prior convictions for the enhancement of punishment. If proven beyond a reasonable doubt, the allegations on their face as to the prior convictions and their sequence would have subjected appellant to a habitual criminal status. *See* Tex.Penal Code Ann. § 12.42(d) (West Supp.1992). The three prior convictions included two 1986 Comal County convictions, one for burglary (CR–86–58A), the other for delivery of a controlled substance (CR–86–174C), and a 1979 Travis County conviction for robbery (58,174), in the 147th District Court. During the penalty stage of the trial, the prosecutor realized that his proof would not support the alleged sequence concerning the two 1986 Comal County convictions. Although the Travis County conviction and one of the Comal County convictions could have been utilized to invoke § 12.42(d), the prosecutor announced he would seek only to use one prior conviction in each case to enhance punishment. In the two second-degree felony cases, the trial court authorized punishment as a first-degree felony if the jury found allegations as to one prior conviction to be true and listed that prior conviction in their verdict. *See* Tex.Penal Code Ann. § 12.42(b) (West 1974). With regard to the aggravated sexual assault cases, the trial court in each case authorized punishment as "repeater" if the jurors found the allegations as to one prior conviction were true and listed that prior conviction in their verdict. *See* Tex.Penal Code Ann. § 12.42(c) (West Supp.1992). The jurors found and listed all three prior convictions in their verdicts, but the range of punishment was limited by the court's instructions.

It is observed that in the sexual assault case, the third amended indictment[7] alleged the prior burglary conviction in Comal County (CR–86–58A) occurred in the 207th District Court. The other three indictments alleged the same prior conviction occurred in the 22nd District Court. The proof supported the allegations in the other three indictments but not that in the sexual assault case. The allegations as to the prior conviction of delivery of a controlled substance in the sexual assault indictment (CR–86–58A) show that the prior conviction occurred in the 274th District Court. The proof supported this allegation, but not the allegations in the other three indictments that the same prior conviction occurred in the 22nd District Court.

The judgments of convictions are reversed and the causes are remanded to the trial court.

---

7. *See McHenry v. State,* 829 S.W.2d 803, 804 (Tex.Crim.App.1992); *Ward v. State,* 829 S.W.2d 787, 793 (Tex.Crim.App.1992), holding that an amendment to an indictment must be reflected on the face of the indictment. The amendments to the indictment in the sexual assault case (CR–90–29) upon which appellant was tried were not reflected on the face of the original indictment.