The STATE of Texas, Appellant,

v.

Gilbert AVILA, Appellee.

No. 08–93–00461–CR.

Court of Appeals of Texas, El Paso.

Nov. 3, 1994.

Rehearing Overruled Dec. 8, 1994.

---

Jaime E. Esparza, Dist. Atty., El Paso, for State.

Miguel Cervantes, El Paso, for appellee.

Before BARAJAS, and KOEHLER and LARSEN, JJ.

## *OPINION*

LARSEN, Justice.

The State appeals the 210th District Court's order in this murder prosecution suppressing certain evidence obtained, pursuant to a search warrant, by surgical removal from defendant Gilbert Avila's body. We reverse.

### *FACTS*

Gilbert Avila is under indictment for the death of his wife, Jacqueline Avila. On July 16, 1993, Ms. Avila died of multiple gunshot wounds inflicted following a heated argument with her husband. Five slugs were recovered from her body. Mr. Avila was also shot, and a bullet remained lodged below his ribcage. Detectives investigating the scene found two guns in the couple's bedroom: the first a 9mm Smith and Wesson pistol which

had been emptied of all six rounds; the second the victim's police department service revolver,[1] also a 9mm Smith and Wesson, from which only one round had been fired. That bullet was found embedded in the wall.

Four days after the shooting, detectives sought a search warrant directing a physician to remove the bullet from Gilbert Avila's body. They took the warrant and underlying affidavit, signed by Detective Lilia Lowe, to Jail Magistrate James Carter. Magistrate Carter signed the warrant and Mr. Avila was transported to R.E. Thomason General Hospital, where an emergency room physician removed the bullet in a surgical proceeding lasting approximately one hour. Emergency room personnel relinquished the bullet to law enforcement authorities.

■ The evidence is conflicting as to whether Mr. Avila consented to the surgery. We resolve all conflicting evidence in a manner supporting the trial court's decision, and we therefore presume that defendant did not consent to the removal of the bullet from his body.

Defendant filed his motion to suppress the bullet as the fruit of an unreasonable search and seizure. After hearing, the trial court granted his motion. The State appeals.

### *STANDARD OF REVIEW*

■ The trial judge is the sole and exclusive trier of facts at hearing of a motion to suppress. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Cannon v. State,* 691 S.W.2d 664, 673 (Tex.Crim.App.1985), *cert. denied,* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Hawkins v. State,* 628 S.W.2d 71 (Tex.Crim.App.1982); *Green v. State,* 615 S.W.2d 700, 707 (Tex.Crim.App.), *cert. denied,* 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981). On appeal, this reviewing Court does not engage in its own factual review but decides whether the trial judge's fact findings are supported by the record. If the implied findings of the district court in this case find support in the record, we are not at liberty to disturb them. We address

---

1. Ms. Avila, a recent graduate of the police academy, had been hired by the El Paso Police De- partment. This was apparently a source of conflict between the couple.

only the question of whether the trial court improperly applied the law to the facts. *Romero*, 800 S.W.2d at 543; *Self v. State*, 709 S.W.2d 662, 664–65 (Tex.Crim.App.1986); *Johnson v. State*, 698 S.W.2d 154, 159 (1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). We must consider the totality of the circumstances in determining whether the trial court's findings are supported by the record, and we will not disturb the findings absent a clear abuse of discretion. *Dancy v. State*, 728 S.W.2d 772, 777 (Tex.Crim.App.), *cert. denied*, 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987).

■ If the trial court's decision is correct on any theory of law applicable to the case, we will sustain it. *Romero*, 800 S.W.2d at 543; *Calloway v. State*, 743 S.W.2d 645, 651–52 (Tex.Crim.App.1988); *Spann v. State*, 448 S.W.2d 128, 130 (Tex.Crim.App.1969). This principle holds true even though the trial judge gives the wrong reason for his decision, *Salas v. State*, 629 S.W.2d 796, 799 (Tex.App.—Houston [14th Dist.] 1981, no pet.), and is especially true with regard to the admission or exclusion of evidence. *Romero*, 800 S.W.2d at 543; *Dugard v. State*, 688 S.W.2d 524, 530 (Tex.Crim.App.1985). In this case, the trial judge did not specify his reasons for finding the evidence inadmissable.

### FOURTH AMENDMENT STANDARD FOR PHYSICAL INVASION OF DEFENDANT'S BODY

■ Obtaining instrumentalities or evidence of a crime from within a defendant's body constitutes a search and seizure, subject to 4th Amendment constraints. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Gentry v. State*, 640 S.W.2d 899, 902–03 (Tex.Crim.App.1982). Absent consent, surgical invasion to obtain evidence requires a valid search warrant obtained in compliance with the Texas Code of Criminal Procedure. *McBride v. State*, 840 S.W.2d 111, 114 (Tex.App.—Austin 1992, pet. ref'd). Invasions of the body of an accused to obtain evidence may, under certain cir-

cumstances, comply with due process and constitute a reasonable search and seizure, if done pursuant to probable cause and after issuance of a warrant, by medical personnel using proper medical procedures and if done without brutality which "shocks the conscience." *Schmerber*, 384 U.S. at 757–60, 86 S.Ct. at 1826–30, 16 L.Ed.2d at 908–14; *Oviedo v. State*, 767 S.W.2d 214, 217 (Tex. App.—Corpus Christi 1989, no pet.). In reviewing a motion to suppress evidence taken from a defendant's body, we consider six factors to determine the reasonableness of such bodily search and seizure:

1. The existence of probable cause and a search warrant, absent exigent circumstances;

2. The extent to which the procedure threatens the safety or health of the individual;

3. The taking of all reasonable medical precautions and employment of no unusual or untested procedure;

4. The procedure was performed by a physician in a hospital according to accepted medical practices;

5. The search may be unjustifiable if it endangers the life or health of the accused; and [2]

6. The extent of intrusion upon the individual's dignitary interests, personal privacy, and bodily integrity.

*Winston v. Lee*, 470 U.S. 753, 759–61, 105 S.Ct. 1611, 1615–17, 84 L.Ed.2d 662, 668–69 (1985); *Oviedo*, 767 S.W.2d at 217–18; *Marmolejo v. State*, 743 S.W.2d 669, 670 (Tex. App.—El Paso 1987, pet. ref'd). The U.S. Supreme Court has characterized the test to be applied in this situation as one of balancing:

The reasonableness of surgical intrusions beneath the skin depends on a case-by-case approach, in which the individual's interests in privacy and security are weighed against society's interest in conducting the procedure. *Winston*, 470 U.S. at 760, 105 S.Ct. at 1616, 84 L.Ed.2d at 669.

---

**2.** We discern no difference between prong two and prong five, but for the sake of consistency

adopt the established formulation of the test.

We must therefore apply the six-prong *Winston* test to the facts here, weighing Mr. Avila's individual interests against those of society, in order to determine whether the trial court correctly decided to suppress the fruits of the surgical procedure.

### 1. Probable cause and warrant.

 Law enforcement officials properly obtained a search warrant from a neutral magistrate before taking defendant to a doctor for removal of the bullet. Detective Lowe's affidavit in support of the warrant fully sets out probable cause for her belief that the offense of murder had been committed, and that an implement or instrument used in commission of the offense was lodged within the defendant's body. The affidavit sets out the facts surrounding the shooting as known to Detective Lowe at the time, and explains the evidentiary importance of the bullet within Avila's body:

> Affiant believes that the bullet lodged within the body of the defendant was fired from the same gun which the defendant used to fatally shoot the victim.
>
> Affiant further believes that the bullet lodged in the defendant's body will exhibit the same type of non Hydra–Shock jacketing as the slugs recovered from the victim's body, thus indicating that the defendant's wound was self-inflicted, contradicting his claim that he was shot by the victim and shot her while acting in self-defense.
>
> Affiant has submitted both weapons to the Texas Department of Public Safety laboratory in Austin, TX. Firearms Examiner, William Sorrow, has determined that the bullets fired from each pistol exhibit distinctive marks suitable for comparison with the slug to be removed from the body of the defendant. Thus, the evidentiary value of the bullet from the body of the defendant is substantial and a direct comparison can be made with the test fired bullets.

Probable cause and its factual basis are well-delineated in the affidavit, and the warrant was properly issued by a magistrate with authority to do so. This prong of the test is satisfied.

### 2. Life and health of suspect.

Detective Lowe's probable cause affidavit also states:

> Affiant has spoken with Dr. Ayala, a licensed physician in the State of Texas, who has examined GILBERT AVILA in the emergency room of R.E. Thomason Hospital. Dr. Ayala stated the following: Removing the bullet would entail making a small incision, approximately 2 cm. in length at the site where the bullet is lodged. The bullet is lodged approximately ½ to 1 cm. below the surface of the skin and can be felt through the skin. The bullet is lodged at about the posterior/axillary line where it intersects with the 7th rib. Mr. Avila would experience minimal pain and discomfort using local anesthesia and would be minimally affected while the wound heals. This type of surgery poses minimal intrusion upon Mr. Avila's bodily integrity and poses no threat to his life or personal safety. There is no threat of permanent serious injury during this type of surgery. This procedure is an accepted medical procedure and should be done by a licensed physician, taking all reasonable medical precautions and should be performed in a hospital or office according to accepted medical practices.
>
> The surgical procedure described above presents the least intrusive means for recovering the bullet from the defendant's body.

At hearing on the motion to suppress, Roxanne Hubenak, M.D., the emergency room physician who removed the bullet testified similarly. Dr. Hubenak stated that this was a minor surgical procedure requiring Avila to remain in the hospital less than two hours. Local, not general, anesthesia was used to deaden pain during the operation. The threat to Avila's safety and health was "minimal to none." Removal of the bullet required no unusual or untested medical procedure; she, a licensed physician, performed the operation using accepted medical techniques. She stated:

> This is a minor surgical procedure such as suturing. Any clinic that would be capable of suturing would be capable of removing this foreign body. It was very superficial.

This evidence was uncontroverted. Thus, both the facts before the magistrate who issued the warrant, and those before the trial court determining the motion to suppress, amply demonstrated that the threat, if any, to Avila's health and safety was minimal.

3. **All reasonable medical precautions, no unusual or untested procedure.**

4. **Performed by a physician in a hospital according to accepted medical practices.**

5. **Unjustifiable if search endangers life or health of the accused.**

The evidence recited as supporting prong two of the Winston test also clearly satisfied prongs three, four, and five.

6. **The extent of intrusion upon the individual's dignitary interests, personal privacy, and bodily integrity.**

The evidence recited above indicates that the surgery performed in executing the search warrant was superficial, and was little more invasive than suturing defendant's skin would be. Although all forays within an individual's body necessarily include intrusions upon privacy, dignity, and personal integrity, we find that the intrusion here was as minimal as can be found in a surgical proceeding. Moreover, we find that society's interest in obtaining the evidence at issue here outweighed the privacy and dignitary interests asserted by defendant. The State presented evidence that defendant was preparing to bond out of jail, and detectives feared he would have the bullet removed and disposed of before it could be examined by law enforcement officers. The origin of the bullet is important to establishing or refuting defendant's self-defense claim. Society's interest in this evidence, therefore, is great.

 There is nothing in this record to indicate the procedure performed was anything other than routine and simple. While no surgery is completely risk-free, and all surgery encroaches upon personal privacy and dignity, the 4th Amendment does not forbid all such encroachments, rather its

"proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Winston,* 470 U.S. at 760, 105 S.Ct. at 1616, 84 L.Ed.2d at 669, quoting *Schmerber v. California,* 384 U.S. at 768, 86 S.Ct. at 1834, 16 L.Ed.2d at 918.

We therefore conclude that the trial court's decision to suppress the bullet obtained pursuant to this search warrant was not supported by the evidence.

### ADVERSARIAL HEARING

 Defendant Avila argues, nonetheless, that the suppression should be upheld. He contends that before a warrant for surgical invasion can satisfy constitutional guarantees against unreasonable search and seizure, an adversarial hearing must be held. This theory is grounded in certain dicta from the *Winston* case. There, the U.S. Supreme Court stated in a footnote:

> Because the State [of Virginia] has afforded respondent the benefit of a full adversary presentation and appellate review, we do not reach the question whether the State may compel a suspect to undergo a surgical search of this magnitude for evidence absent such special procedural protections. *Winston,* 470 U.S. at 760 n. 6, 105 S.Ct. at 1618 n. 6, 84 L.Ed.2d at 669 n. 6.

Many jurisdictions have concluded that the requirements of the 4th Amendment necessitate an adversarial hearing with interlocutory appellate review *before* any surgical invasion to seize evidence or instruments of crime. See *United States v. Crowder,* 543 F.2d 312 (D.C.Cir.1976); *State v. Anonymous,* 32 Conn.Sup. 306, 353 A.2d 789 (1976); *Hughes v. United States,* 429 A.2d 1339 (D.C.App. 1981); *Creamer v. State,* 229 Ga. 511, 192 S.E.2d 350 (1972); *State v. Martin,* 404 So.2d 960 (La.1981); *Hughes v. State,* 56 Md.App. 12, 466 A.2d 533 (Ct.Spec.App.1983); *State v. Overstreet,* 551 S.W.2d 621, 628 (Mo.1977); *State v. Richards,* 585 S.W.2d 505 (Mo.App. 1979); *State v. Lawson,* 187 N.J.Super. 25, 453 A.2d 556 (App.Div.1982).[3] We have

---

3. A number of these cases have adopted a four-

prong reasonableness test first enunciated by

found no Texas case, however, requiring such an adversarial hearing before a warrant will issue. Indeed, the only Texas cases which speak directly to this issue plainly hold that the normal procedures accompanying issuance of a search warrant are sufficient to protect individual rights implicated in invasive bodily searches. *Marmolejo,* 743 S.W.2d at 670; *McBride,* 840 S.W.2d at 114; *Oviedo,* 767 S.W.2d at 218. Although the commonly recited rule is that we will not reverse a case if it is correct on any theory of law, it must be a theory of law *applicable to the case.* See *Sedani v. State,* 848 S.W.2d 314, 319 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). We interpret this to mean that we cannot uphold a trial court's ruling based upon law which has never been adopted in this jurisdiction, no matter how well-established the rule may be elsewhere.

We have carefully reviewed the cases defendant relies upon. We agree that bodily invasion by the State to seize evidence of crime is an extreme measure, involving most compelling questions of health, safety, personal risk, privacy, and individual dignity. Extraordinary precautions are surely called for in these situations. We cannot say, however, that such precautions were not taken here under the law as it currently exists in Texas. Neither the Texas Legislature nor any Texas court has, to date, required an adversarial hearing before a warrant for a surgical search and seizure may issue. We cannot agree with the trial court's implied determination that one must be held before the 4th Amendment's guarantees are satisfied. We therefore cannot affirm the trial court's decision on this ground.

## CONCLUSION

The record before us clearly establishes that the surgical removal of a bullet from Gilbert Avila's chest was a reasonable search,

pursuant to a valid warrant, and done according to standard medical procedures. The procedure entailed no significant threat to Avila's health, safety, or personal privacy. The societal interest in obtaining evidence necessary to a murder prosecution was great. The trial court's order suppressing the fruit of this surgery is therefore reversed, and the case remanded for further proceedings in accordance with this opinion.

District of Columbia Circuit. In those jurisdictions, surgical excision of evidence from a defendant's person is reasonable only if: (1) the evidence sought is relevant, can be obtained in no other way, and there is probable cause to believe that the proposed operation will produce it; (2) the operating procedure is a minor one, to be performed by a skilled surgeon, with every possible precaution to be taken to guard against any surgical complications, so that the risk of permanent injury is minimal; (3) *prior to performance of the operation, the individual is to be afforded a full adversary hearing at which he is represented by counsel;* and (4) *thereafter and before the operation is performed, the individual is to be afforded the opportunity for appellate review.* *Crowder,* 543 F.2d at 316; *Hughes,* 429 A.2d at 1339; *State v. Martin,* 404 So.2d at 962; *State v. Richards,* 585 S.W.2d at 506 [emphasis added].